Kenneth R. BUTTERS and Elma Butters, Plaintiffs-Respondents,

v.

CITY OF INDEPENDENCE, Missouri, Defendant,

and

Royal Indemnity Company, Garnishee-Appellant.

No. 57930.

Supreme Court of Missouri, Division No. 1.

July 22, 1974.

Opinion Modified on Court's Own Motion.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 9, 1974.

**420**

Gordon, Adams, Niewald & Risjord, Weeks, Thomas, Lysaught, Bingham & Johnston, Kansas City, for plaintiffs-respondents.

Jack G. Beamer, McKenzie, Williams, Merrick, Beamer & Wells, Kansas City, for garnishee-appellant.

WELBORN, Commissioner.

Appeal by insurer from adverse judgment in garnishment proceeding by plaintiffs who had judgment in action against insured.

In 1965, the City of Independence, which operates an electric power transmission and distribution system, contracted with Evans Electrical Construction Company for the furnishing by Evans of workmen to perform work under direction of the City Electrical Utility Director in the maintenance and operation of the city-owned power system. The city agreed to pay Evans the cost of the labor furnished at scheduled hourly rates, for equipment rental, and a lump sum for administration. Evans agreed to indemnify the city for any loss it might sustain as a result of liability imposed on the city because of negligence of Evans employees and to provide insurance coverage against such loss. Evans furnished an Owners and Contractors Protection Liability policy written by Royal Indemnity Company, the garnishee-appellant, with the City of Independence the named insured.

In 1968, the city was engaged in an expansion of its transmission system by building new lines and transformer stations and increasing the capacity of old ones. The work involved movement and installation of heavy transformers and other equipment. The city contracted with Consolidated Transfer Warehouse Company to move the transformers from railroad sidings to the installation site. The contract with Consolidated required that company to hold the city harmless from any liability imposed on the city because of Consolidated's operation and to provide insurance coverage which was done through United States Fidelity & Guaranty Company.

To assist it in the movement of the large transformers, Consolidated contracted with Olinger Heavy Hauling Services to provide personnel and equipment. Olinger was insured by Hartford Accident & Insurance Corporation.

Plaintiff Kenneth R. Butters was employed by Consolidated as a crane oiler. On July 11, 1968, he assisted Robert Chrisman, a crane operator employed by Consolidated, in unloading a 45-ton transformer from a railroad siding onto a flat bed trailer, using a mobile crane. The transformer was to be installed at Substation I of the

Independence electric system. The next morning, Butters drove the mobile crane to Substation I, where it was to be used in unloading the transformer which was on the flat bed truck, just outside the fence which surrounded the substation.

Butters drove the crane from the street onto the roadway leading to the gate to the substation and, at Chrisman's direction, stopped the crane directly under transmission lines entering and leaving the substation. Chrisman then took over operation of the crane and Butters was on the ground to release the hoisting cable. In the course of this procedure, Chrisman raised the boom and it either touched or came in close proximity with the overhead transmission wires carrying 69,000 volts of electricity. Butters touched the hoisting cable as it swung back toward him. He received a severe electrical shock which resulted in very serious injury.

An employee of Evans had unlocked the gate at Substation I before the crane arrived and had left the premises. No Evans employee was present when the crane arrived or when the accident occurred.

Butters made a claim for Workmen's Compensation against Consolidated and brought suit against the City of Independence and Olinger in September, 1969. In pre-trial discovery, the existence of the contract between the city and Evans came to light and Evans was joined as a party defendant in a second amended petition filed March 27, 1970. Cross-claims were filed by some defendants against Olinger and the City of Independence filed a third party claim against Consolidated. The city also filed a cross-claim against Evans.

Evans forwarded the amended petition by which it was joined in the action to Royal as its insurer on April 2, 1970. The city attorney for Independence was not aware of the policy issued by Royal to the city until he was told of it by counsel for plaintiff. Search of the city's files brought forth the Royal policy and in April, 1970, oral demand to defend the city

was made upon counsel employed by Royal appearing on behalf of Evans at depositions.

The record here is silent (The briefs indicate depositions were taken in the interim.) as to further activity until November, 1970 when the Independence City Counselor addressed a letter to Evans and Royal. The letter demanded that Evans and Royal undertake the defense of the city. The letter concluded as follows:

"On behalf of the City I also wish to advise that if full defense, without any reservation of rights, is not undertaken by your two corporations as outlined herein, please be advised that it will be the City's intention to prepare for passage as an emergency ordinance at the regular City Council meeting on November 16, 1970 authorizing the City Counselor's Office to enter into a consent judgment with the plaintiffs in the case in question to the full extent of the prayer for judgment with the express covenant that plaintiffs and their counsel shall look exclusively to the assets of the Evans Electrical Company and the Royal Indemnity Company. The City will further pursue its rights under the cross petition filed in this case against Evans Electrical Construction Company and further shall file suit against the Royal Indemnity Company for any sums paid out in investigation, settlement, judgment, and/or legal expense."

On November 6, 1970, Royal's claim manager wrote the city:

"Your undated letter on the above subject was received in this office on November 4, 1970, and this was our first notice of a claim against the above mentioned policy number.

"The second page of your letter requests that we assume the full defense of the City of Independence without any reservation of rights. The petition as filed obviously prohibits us from agreeing to defend the City of Independence without specifically reserving all rights we have under the

above mentioned policy. If you are willing to consider our undertaking the City of Independence it will be necessary for the City to execute a non-waiver agreement running to the Royal Indemnity Company and we will also specifically reserve all rights the policy grants."

The city replied that it was unwilling to execute a reservation of rights agreement, expressing doubt that it had authority to do so.

Subsequent correspondence reiterated the parties' positions, Royal offering to defend and pay any judgment within the policy coverage, and the city insisting that Royal either assume the defense and pay any judgment or state particularly why it would not pay any judgment. In one reply to the city's demand, Royal stated that the allegations of plaintiffs' petition were "too broad" for it to agree to pay "any" judgment.

On January 7, 1971, the city transmitted to Royal a copy of an ordinance adopted by the City Council on January 4, 1971, authorizing an agreement between the city and the Butterses, whereby, in consideration for the city's payment to Butters of $25,000, the Butterses agreed to limit execution on any judgment recovered by Butters against the city to claim against insurer, including Royal, or claim based upon indemnity agreement, including the indemnity obligation of Evans. The agreement specified that it was entered into by virtue of § 537.065, RSMo 1969, V.A.M.S.

Royal responded that it would consider the proposed agreement and consent judgment to be permitted by the city in connection with it violative of the policy terms and again offered to defend and pay any judgment for which the policy provides coverage.

A further communication by the city to Royal, dated January 22, 1971, reiterated the city's position and reminded Royal of a January 28 setting for the cause. This was met by a Royal response along the lines of its previously stated position.

On January 28, 1971, the case came on for hearing in the Jackson County Circuit Court. Plaintiffs dismissed as to Olinger (an $80,000 settlement was reached with them) and Evans, without prejudice. The case was heard between the Butterses and the city only. The plaintiffs testified and presented medical testimony. Counsel for the city interrogated Mr. and Mrs. Butters to ascertain that they understood the settlement arrangement with the city. Medical witnesses were not cross-examined. Plaintiffs also offered excerpts from depositions of persons employed by the city, Evans, Olinger and Consolidated concerning the accident and safety regulations applicable to the operation which resulted in the accident. The city offered all of the depositions in evidence, but apparently did not undertake to point out any testimony in the depositions which would relieve the city of liability.

On April 8, 1971, the court entered its judgment in favor of plaintiff Butters and against the city for $250,000 and in favor of Mrs. Butters for $50,000. The judgment entry included the following recitals:

"Now on this 8th day of April, 1971, the court, on its own motion, being fully advised in the premises, hereby sets aside, vacates and holds for naught the order which it entered herein on March 11, 1971, for the following reasons:

"1. Said order, contrary to the court's announced intentions, purports to decide or might be interpreted as deciding issues of liability as between the defendant City of Independence, cross-defendants Orville W. Olinger and Albert J. Sinlawski, d/b/a Olinger Heavy Hauling Services, and Evans Electrical Construction Company, and third party defendant Consolidated Transfer and Warehouse, Inc.

"2. Said order was made without giving counsel for cross-defendants and third party defendant an opportunity to confer with the court as previously agreed.

"3. Said order, coupled with the court's prior order granting separate trial of the

issues between plaintiff and defendant and between defendants on their cross-claims, prejudiced the rights of defendants Consolidated Transfer and Warehouse Company, Inc., and Evans Electrical Construction Company.

"And now on this date the court having heard the evidence and arguments of counsel finds the issues for the plaintiffs and against the defendant City of Independence, Missouri and reserves judgment as to the specific grounds of the defendant City of Independence, Missouri's liability and as to the liability, if any, of defendants Orville W. Olinger and Albert J. Sinlawski, d/b/a Olinger Heavy Hauling Services, Evans Electrical Construction Company, and third party defendant, Consolidated Transfer and Warehouse, Inc. until trial of such issues between the defendant City of Independence, Missouri and the cross-defendants and third party defendant."

The judgment became final and summons to garnishee issued against Royal in aid of execution. Interrogatories were directed to the garnishee, with answers by the garnishee, plaintiffs' denial of such answers, reply of Royal to such denial, plaintiffs' rejoinder to the reply, discovery interrogatories and answers thereto, requests for admissions and answers thereto. Ultimately, motion for judgment was filed by Royal. The trial court, without further hearing, entered judgment in favor of plaintiffs for the limits of the policy, or $100,000.

The basic findings of the trial court are found in the following excerpts from its findings and judgment:

"5. The City of Independence is 'legally obligated' within the policy terms to pay the amount of the judgment to plaintiffs.

"6. The Court finds as a matter of fact and holds as a matter of law that Royal Indemnity Company is liable, to the extent of its policy limit, to pay the judgment on behalf of the City, which judgment was for bodily injury caused by an occurrence arising out of operations performed for the City by Evans as designated in the policy

schedule and provided in the contract between Evans and the City.

"7. The Court finds as a matter of fact and holds as a matter of law that the Royal Indemnity Company waived the applicability of all exclusions and is estopped to assert their applicability because their denials of the obligation to pay made no reference to any exclusion whatever.

"8. The Court finds as a matter of fact and holds as a matter of law that the Royal Indemnity Company waived and is estopped to assert breach of the policy condition requiring cooperation because garnishee did not offer a full, non-reservation of rights defense to the City, so that the City, following garnishee's denials of coverage, had no further obligation to cooperate with Royal Indemnity Company which had breached the policy and the City was, therefore, free to defend itself as it saw fit, including entering into the statutory covenant with plaintiffs. Further refusal of the City to agree to the tendered reservation defense was not a failure to cooperate.

"9. The Court finds as a matter of fact and holds as a matter of law that the garnishee waived the requirement concerning notice of claim as soon as practicable because garnishee failed to assert this policy condition in its denials. Further, irrespective of waiver, the Court finds that the City Counselor was unaware of the existence of the policy of insurance until advised by plaintiffs' attorney of its apparent existence in April, 1970, at which time the City Counselor gave notice of the aforesaid claim. In addition, the Royal Indemnity Company had notice of claim and suit on April 2, 1970, when tendered suit papers by Evans Electrical Construction Company so that the garnishee, Royal Indemnity Company, had notice of claim and suit before or contemporaneous with the City's knowledge of the existence of the policy. The Court, therefore, finds that notice was given to the garnishee as soon as practicable. Further, the Court finds that garnishee was not prejudiced by notice of claim and suit on April 2, which was be-

fore the completion of discovery and a year before judgment was entered.

"10. The Court finds as a matter of fact and holds as a matter of law that when the Royal Indemnity Company received suit papers on April 2, 1970, the policy condition requiring tender of suit was met. The Court further finds that Royal Indemnity Company was not prejudiced with respect to the condition requiring tender of suit papers because they were received before discovery was complete and a year before judgment was entered. Further, Royal Indemnity Company is estopped to assert any claimed prejudice as to notice of suit or the right to conduct the defense because there was no effort to retake any depositions in the case nor is there any showing that any facet of the case would have developed any differently had Royal previously received notice of claim or suit.

"11. The Court finds that Royal through its attorneys were advised by both plaintiffs' attorneys and the City Counselor of the intention of the parties to enter into a statutory covenant to limit execution. Royal's attorneys appeared at pre-trial conferences and the hearings in the case and kept the Royal fully informed of the proceedings so that the proceedings were entirely open with full notice to all parties and there was no fraud or collusion. Further, the Assistant City Counselor, Mr. Cochran, conducted the defense, handled the settlement negotiations, and entered into the statutory covenant in a competent manner and in good faith after Royal refused to perform under the City's policy so that Royal now has no right to complain as to the proceedings or the judgment and there is no violation by the City of the policy condition requiring cooperation and the Royal has no standing to here attack the judgment entered by this Court on April 8, 1971."

In this court, appellant has not directly attacked what appears to have been the fundamental basis of the trial court's judgment, i. e., that the failure of the appellant to offer an unqualified, non-reservation of rights to the city created an es-

toppel to assert any breach by the city of the cooperation and non-settlement clauses of the policy. Appellant cites Rule 73.-01(d), V.A.M.R., and states that this court is free, in this non-jury case, "to make its own findings of fact and conclusions of law." Appellant has ignored the equally applicable provision of Rule 73.01(d) that the judgment below is not to be set aside "unless clearly erroneous." The burden of demonstrating that the judgment is clearly erroneous is on the appellant. Yates v. White River Valley Electric Co-operative 414 S.W.2d 808, 811 [4–8] (Mo.App.1967). If appellant is of the opinion that under Rule 73.01 this court will undertake review of the transcript of the record below and make findings and conclusions independently of the trial court's rulings, appellant is laboring under a misapprehension of the role of this court.

The basic question presented is the effect of the insurer's offer to defend under a reservation of rights for non-coverage and the insured's refusal of such offer upon the respective rights and obligations of the parties under the contract of insurance. The trial court treated the insurer's position the same as if it had refused the defense of the claim, leaving the city free to manage the claim as it saw fit, so long as it acted in good faith and without collusion, with the only ultimate question in such event being whether the liability was covered by the policy.

Appellant does not contend that the petition, which must be looked to for establishment of its obligation to defend under the policy (Zipkin v. Freeman, 436 S.W.2d 753 (Mo.Banc 1968)), did not state some grounds of liability covered by its policy of insurance. Therefore, the duty to defend did exist. Babcock & Wilcox Company v. Parsons Corporation, 430 F.2d 531, 537 [6, 7] (8th Cir. 1970). Because it considered some of the allegations of the petition stated a claim beyond its policy coverage, the insurer undertook to offer a defense, with a reservation of the right to contest whether or not a judgment ultimately entered in the case fell within the

policy coverage. The city was not obligated to accept the defense on such terms (7A Appleman Insurance Law and Practice, § 4686, p. 474 (1962)), particularly when the insurer was unwilling, as an alternative to unqualified defense, to advise the city of the circumstances of recovery which the insurer felt would be beyond the coverage. The city was entitled to such advice from its insurer if it was to make an intelligent assessment of the propriety and advisability of entrusting defense of the litigation to the insurer in a conflict of interest situation. The insurer's response to the alternative request of the city was: "You are a licensed attorney at law and therefore have knowledge of the subject matter at hand."

■ In view of its attempt to reserve the coverage question, the insurer had no right to insist upon controlling the defense. However, the insurer ignored the request of its insured for the advice which would have permitted a joint defense of the claim and in effect sought to retain control of the defense.

■ The trial court concluded that the acts of the insurer were equivalent to a refusal of a defense. This conclusion has not been shown to have been clearly erroneous. Landie v. Century Indemnity Company, 390 S.W.2d 558, 561–562[1] [2] (Mo.App.1965).

■ The consequence of such conclusion, likewise, is that " * * * the insured is released from the policy prohibition against incurring expenses and negotiating and settling claims." Landie v. Century Indemnity Company, supra, 390 S.W. 2d 562; 44 Am.Jur.2d, Insurance, § 1550, p. 432 (1969).

■ Appellant's attack on the trial court's finding that the city was "obligated to pay" the judgment, within the meaning of the policy, is without merit. Farmers Mutual Automobile Insurance Co. v. Drane, 383 S.W.2d 714, 719 [3] (Mo.1964).

That leaves the question of whether or not the evidence showed that the loss was within the coverage and of whether or not the settlement between plaintiffs and the city was collusive. (Appellant has reiterated its factual argument that the city violated the notice requirement of the policy, but again, it has not sought to demonstrate that the trial court's conclusion that any defense on such basis was waived by the insurer was erroneous and appellant's argument, therefore, requires no response.)

■ As above noted, the trial court in the action by plaintiffs against the city specifically reserved any ruling as to the exact grounds of the city's liability. Inasmuch as that issue was not determined in that case, collateral estoppel by reason of the prior judgment does not arise. In this case, the court purported to determine the question without a trial and the insurer has had no opportunity to be heard on the issue of the factual basis for the city's liability. In fact, the record here does not disclose just what the basis of the trial court's ruling in the present case was. Respondents have filed a "Supplemental Transcript" which includes a transcript of the hearing which resulted in judgment against the city. However, the record in the garnishment proceeding does not show that the transcript of the prior proceeding was introduced in evidence in the garnishment proceeding, or that the court was asked to or did take judicial notice of the prior trial.

Appellant was entitled to a trial on the coverage issue. Drennen v. Wren, 416 S. W.2d 229, 234 [9–16] (Mo.App.1967). The trial court erred in determining such issue without affording appellant an opportunity to be heard. Appellant's motion for judgment went only to the issue of breach of the insuring agreement and did not include the coverage question or the good faith of the city in entering into the agreement with plaintiffs.

■ Appellant complains of the trial court's refusal to permit appellant to file a third-party petition against Consolidated Warehouse. The petition sought indemnity on behalf of Evans and Royal against Consolidated. The trial court denied the motion. Appellant points to no rule which

authorizes a third-party petition in a garnishment proceeding. Therefore, the trial court's ruling was not error.

■ Appellant's attack on the constitutionality of § 537.065, RSMo 1969, deserves little note. Authority for the city's action in taking over the defense and effecting a settlement was based upon the prior breach by appellant of the duty to defend, not § 537.065. That section does not deprive appellant of its right to be heard on the question of policy coverage or collusiveness of the parties in the judgment against the city. The act does not discriminate against insurers and favor other indemnitors. In this case, plaintiffs have sought garnishment against Evans on its indemnity obligation.

The judgment of the trial court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.