Carl J. ALSBACH, Plaintiff,

v.

Margaret Sue BADER and Gretson Corbitt, Defendants-Respondents,

and

State Farm Mutual Automobile Insurance Company, Intervenor-Appellant.

No. 42378.

Missouri Court of Appeals, Eastern District, Division Four.

May 5, 1981.

149

Frank J. Niesen, Jr., Donald Clooney, Ben Ely, Jr., St. Louis, for plaintiff.

Evans & Dixon, by Eugene K. Buckley and Robert D. Arb, St. Louis, for intervenor-appellant.

Joseph P. Cunningham, III, Festus, for defendants-respondents.

SATZ, Presiding Judge.

In the court below, appellant State Farm Mutual Automobile Insurance Company (State Farm) filed a motion to intervene as a matter of right under Rule 52.-12(a)(2). The trial court denied State Farm's motion. State Farm appeals.[1] We reverse and remand.

The facts are not in dispute. A car driven by plaintiff, Carl J. Alsbach, collided with a car driven by defendant, Margaret Sue Bader. Plaintiff sued defendant Bader, alleging Bader was negligent and joined Bader's employer, Gretson Corbitt, as a defendant under the doctrine of respondeat superior. In her answer, defendant Bader denied negligence on her part and pleaded plaintiff's contributory negligence as a defense. Defendant Bader also filed a counterclaim based upon plaintiff's negligence. In his answer, defendant Corbitt denied liability and agency and also pleaded plaintiff's contributory negligence as a defense.

At the time of the collision, plaintiff was insured under a liability policy issued by State Farm. Pursuant to the terms of this policy, State Farm retained an attorney to defend plaintiff against defendant Bader's counterclaim. The policy also contained uninsured motorist coverage which obligated State Farm to pay damages for any bodily injury plaintiff was legally entitled to collect from the owner or driver of an uninsured vehicle if the injury was caused by an accident involving an uninsured vehicle. In answer to interrogatories, defendants Bader and Corbitt stated they were uninsured at the time of the collision.

Because of its obligations under the uninsured motorist provisions of the policy, State Farm filed a motion to intervene on behalf of defendants as a matter of right

---

1. An order denying intervention is appealable if intervention is a matter of right. *State ex rel.* *Reser v. Martin*, 576 S.W.2d 289, 291 (Mo. banc 1978).

under Rule 52.12(a)(2).[2] State Farm alleged it might be bound by a judgment entered against either defendant on the issue of liability or damages and also alleged its interest was not being adequately represented. Plaintiff did not contest State Farm's motion. Defendants did. In denying State Farm's motion, the trial court found that State Farm's interest was adequately represented by the "original parties" and, also, stated that State Farm's intervention would "spawn and breed conflict." State Farm appeals. Defendants are the respondents in this appeal.

State Farm raises two points on appeal. First, it contends its interest is not adequately represented by the original parties. Second, it contends no real conflict of interest exists to preclude its exercise of its right to intervene. Therefore, State Farm concludes it must be permitted to intervene. We agree with the conclusion reached by State Farm, but we reach that conclusion by reasoning different than State Farm's reasoning.

Rule 52.12(a) defines intervention of right. Under this rule, intervention must be allowed if "the applicant claims an interest in the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest,[3] unless the applicant's interest is adequately protected by existing parties." Thus, an applicant seeking mandatory intervention under Rule 52.12(a)(2) must establish three basic elements: (1) he "must show an 'interest' in the subject of the action in which he seeks to intervene; (2) he must show that his ability to protect his interest will be impaired or impeded as a practical matter; and (3) he must show that his interest is not adequately represented by the existing par-

ties." *State ex rel. St. Joseph Missouri Ass'n of Plumbing, Heating and Cooling Contractors, Inc. v. City of St. Joseph,* 579 S.W.2d 804, 806 (Mo.App.1979).

In Missouri, an insurer seeking to intervene as a matter of right in an uninsured motorist case usually is able to satisfy the first two elements of Rule 52.12(a)(2). The insurer's "interest" in the determination of liability and damages between its insured and the uninsured motorist is sufficient to warrant intervention, *e. g., State ex rel. State Farm Mutual Automobile Ins. Co. v. Craig,* 364 S.W.2d 343, 346-348 (Mo.App. 1963), and, disposition of the issues of liability and damages will "impede [the insurer's] ability to protect that interest" because the insurer will be estopped from relitigating those issues in a subsequent action. *E. g., Wells v. Hartford Accident and Indemnity Co.,* 459 S.W.2d 253 (Mo. banc 1970).[4]

Relying on *Craig* and *Wells,* our courts have uniformly held or stated that an uninsured motorist carrier is entitled to intervene in an action between its insured and an uninsured motorist. *See, e. g., Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 719-720 (Mo. banc 1979); *State ex rel. Manchester Ins. and Indemnity Co. v. Moss,* 522 S.W.2d 772, 774 (Mo. banc 1975); *Beard v. Jackson,* 502 S.W.2d 416, 419 (Mo.App.1973). Clearly, precedent mandates intervention in the present case unless the present facts set this case apart from the prior cases and require different procedures leading to different results. Defendants argue the prior cases can be distinguished in one of three ways. First, they argue, in the present case, unlike the prior cases, there is a party to the action who will adequately represent the insurer. Second, defendants contend intervention by State Farm would create conflicts of interest which would make the

---

**2.** Along with its motion to intervene, State Farm filed a proposed answer to plaintiff's claim against each defendant. Each of these proposed answers tracks the answer filed by each defendant.

**3.** This is broader language than that of former Rule 52.11 which was controlling in the previous uninsured motorist cases cited *infra.* The

language of former Rule 52.11 requires intervention only if the intervenor "is or may be bound by a judgment in the action."

**4.** The insurer must have been given adequate notice and an opportunity to intervene in the prior action. *Wells v. Hartford Accident and Indemnity Co., supra* at 259.

intervention unacceptable. Finally, defendants argue an alternative rule of law should govern intervention in uninsured motorist cases: the insurer should not be allowed to intervene and should not be bound by the judgment. Defendants' arguments are cogent, but, under present Missouri law, they are not persuasive.

■ Defendants first argue the present case differs from prior cases because, in the present case, State Farm has not shown and cannot show the third element of Rule 52.12(a)—inadequate representation of its interest.[5] Defendants contend that in the prior cases the uninsured motorist's representation of the insurer's interest clearly would have been or was inadequate or the adequacy of the representation was not in issue. Defendants claim they will adequately represent State Farm's interest in the present case. We disagree.

■ The determination of whether a proposed intervenor's interest is adequately represented by an original party to an action usually turns on whether there is an identity or divergence of interest between the proposed intervenor and the party. *See, e. g., State ex rel. Duggan v. Kirkwood,* 357 Mo. 325, 208 S.W.2d 257, 261 (1948); *Ratermann v. Ratermann Realty and Investment Co.,* 341 S.W.2d 280, 289 (Mo.App.1960). Another factor to be considered is how effective the representation will be in light of a legal disability or the trial strategy of the party which would

preclude the party from presenting the claims or defenses of the proposed intervenor. Annot., 84 A.L.R.2d 1412, 1421 (1962).

Defendants correctly point out that in the *Craig* and *Beard* cases, *supra,* in which intervention was allowed, the uninsured motorist had defaulted, and, thus, unlike defendants here, the uninsured motorists there were prevented by a legal disability from presenting the insurer's defenses and protecting its interest.

However, defendants are not so successful in distinguishing the *Wells* case. In *Wells,* the plaintiffs obtained a judgment against an uninsured motorist defendant who was not in default. In a subsequent action between the plaintiffs and their insurer, our Supreme Court held the insurer was estopped to relitigate the issues of liability and damages because the insurer had the right to intervene in the prior action and protect its interest. Although the Court did not explicitly discuss adequacy of representation, its conclusion that the insurer had the right to intervene carries with it the implicit finding that the insurer was not adequately represented by the parties to the prior action, in particular, the uninsured motorist. Defendants attempt to distinguish *Wells* and its implied finding of inadequate representation by arguing that in *Wells* the uninsured motorist defendant did not file a counterclaim as defendant Bader did in the present action.[6] This difference may be meaningful but it is not controlling

5. As noted previously, Rule 52.12(a) requires intervention of right "unless the applicant's interest is adequately represented by existing parties." Former Rule 52.11 required intervention of right "when the representation of applicant's interest by existing parties is or may be inadequate." State Farm suggests the change in language in Rule 52.12(a)(2) shifts the burden to the party opposing intervention to demonstrate adequate representation. We disagree. *See State ex rel. St. Joseph Missouri Ass'n of Plumbing, Heating and Cooling Contractors v. City of St. Joseph, supra* at 806. Moreover, the change in language should not change the quantum of the applicant's burden. A showing that the applicant *may be* inadequately represented should support mandatory intervention. *See* Moore, *Federal Practice,* Vol. 3B, § 24.09–1[4], p. 314–316. *But cf. St. Joseph Missouri Ass'n of Plumbing, Heating and Cool-*

*ing Contractors v. City of St. Joseph, supra* at 806.

6. The approval by the *Wells* court of intervention in that situation precludes a finding here that defendant Corbitt would adequately represent State Farm. Corbitt's position cannot be meaningfully distinguished from the position of the defendant in *Wells.* The implicit finding by the *Wells* court that the defendant there might not adequately represent the insurer is controlling in this case on the issue of the adequacy of Corbitt's representation of State Farm's interest. Defendants' argument that State Farm is adequately represented in the present case necessarily rests on the presence of defendant Bader, who will be defending against plaintiff's claim while pursuing her own counterclaim.

insofar as State Farm's intervention is concerned.

The existence of an uninsured motorist's counterclaim may give the non-party insurer greater assurance that its interest will be protected than if no counterclaim existed. The insurer's interest is protected if the uninsured motorist defendant is absolved from liability. If there is no counterclaim, the uninsured motorist defendant can avoid liability either by showing his non-negligence or by showing the plaintiff's negligence. If the uninsured motorist files a counterclaim, however, he does not have these alternative options. He must protect his counterclaim while avoiding liability. Thus, he must show both his non-negligence and plaintiff's negligence. Arguably, then, the presence of a counterclaim requires the uninsured motorist defendant to use both defenses to avoid liability rather than permitting him to select either method as an acceptable alternative. To that extent, the existence of the uninsured motorist defendant's counterclaim may be meaningful to the non-party insurer. However, the existence of the counterclaim does not diminish the need or interest of the uninsured motorist to defend against the plaintiff's claim. It would be highly unusual for the uninsured motorist who has no counterclaim not to use all of his permissible defenses in defending against plaintiff's claim. Thus, even though defendant Bader here may have the additional *interest* of prosecuting her counterclaim, her *interest* in defending against plaintiff's claim is not a function of the presence or absence of her counterclaim and this *interest* would be no different than the uninsured motorist defendant's *interest* in *Wells* defending against the plaintiff's claim there.

■ Defendants also point out that in *Wells* the uninsured motorist defendant entered into a contract under § 537.065 RSMo 1969 requiring plaintiff to recover its damages solely from the insurer. Defendants' observation is not completely accurate. In *Wells*, the defendant and plaintiff did attempt to enter into a contract under § 537.065 RSMo 1969. However, the court found the contract lacked consideration and, therefore, did not consider its effect on the issues before it. *Id.* at 260. Nonetheless, an uninsured motorist defendant may enter into a valid contract under § 537.065 RSMo 1978 absolving himself from being financially responsible for an unfavorable judgment. This contract would significantly affect the uninsured motorist's possible representation of the insurer's interest in a case, like *Wells*, where no counterclaim was filed. By absolving himself from ultimate financial responsibility, the uninsured motorist defendant absolves himself from the necessity of defending himself on liability and damages and, therefore, affords no protection of the insurer's interest on these issues. This is not the case when the uninsured motorist defendant had filed a counterclaim. He could enter into the same contract under § 537.065 RSMo 1978 but this legal hedge against an unfavorable judgment would not diminish the vigor he must extend in the pursuit of his counterclaim. His non-negligence would still be crucial to his counterclaim and, thus, he must vigorously litigate the issue of his liability even though the contract precluded a recovery of judgment from him. Thus, the existence of a counterclaim gives assurance that the uninsured motorist defendant would adequately represent the non-party insurer's interest on liability. On this ground, the present case can be distinguished from *Wells* and other uninsured motorist cases where no counterclaim has been filed.

■ Despite this dissimilarity, however, we still conclude that defendant Bader will not adequately represent State Farm in this action. Even though a contract under § 537.065 RSMo 1978 may not affect the vigor of defendant Bader's defenses on liability in the present case, the contract would affect the vigor of her defenses on the amount of damages. The contract would eliminate any incentive for Bader to keep the amount of damages as low as possible in the event of an unfavorable decision on the issue of liability. Defendant Bader's trial strategy and tactics would be

focused on showing that she was not negligent and the amount of damages would not be a necessary concern of hers. Thus, defendant Bader's pursuit of her counterclaim would not necessarily protect State Farm's interest in limiting damages. In short, defendant Bader cannot be said to adequately represent State Farm on the issue of damages.

More important, however, is the divergence of interest between defendant Bader and State Farm which would affect Bader's representation of State Farm's interest on the liability issue. There are at least two possible defenses against plaintiff's claim. The first is defendant Bader's non-negligence. As noted, Bader could present this defense and, in so doing, would protect State Farm's interest. The second defense is plaintiff's contributory negligence. This defense requires, at least, tacit acknowledgement of defendant Bader's negligence and a showing that plaintiff's own negligence contributed to the accident. State Farm could present this defense. Defendant Bader could not, because a finding or admission of her negligence defeats her counterclaim by establishing plaintiff's defense to the counterclaim. Since defendant Bader will be unable to present a defense which may effectively defeat plaintiff's claim and which State Farm could present, Bader cannot adequately represent State Farm's interest. The third element of Rule 52.12(a) is, thus, established, and State Farm has the right to intervene.

■ Defendants next contend intervention by State Farm would create conflicts of interest which would make intervention unacceptable. One of defendants' unarticulated arguments is that it is incongruous to enforce State Farm's right to intervene, when, as demonstrated, enforcement of that right may well destroy defendant Bader's ability to pursue her counterclaim.[7] Admittedly, if allowed to intervene, State Farm may choose to admit defendant Bader's negligence and argue plaintiff's contributory negligence and, thus, damage Bader's ability to pursue her counterclaim. Nonetheless, this contributory negligence defense is a valid one, and one which State Farm could clearly raise if it were made a party to the suit by joinder. A tension always exists between the right of the intervenor to protect its interest and the right to the original parties to control the lawsuit. Nothing in Rule 52.12 precludes an intervenor from raising a different defense than the original defendant chooses to raise. The intervenor is merely precluded from injecting an independent controversy which should be the subject of an original lawsuit into the pending action. *Pine Lawn Bank & Trust Co. v. City of Pine Lawn*, 365 Mo. 666, 285 S.W.2d 679, 685 (1956). Here, State Farm is not seeking to do this. It only wants to ensure full litigation of the existing liability dispute. Under our present law, we cannot extinguish State Farm's right to intervene because it may present a defense which is contrary to defendant's trial strategy. Indeed, under our present law, this is the very reason it must be allowed to intervene.

■ Defendants also argue State Farm would have an unacceptable internal conflict of interest if allowed to intervene. As noted, under the terms of its policy, State Farm is required to hire an attorney to defend plaintiff against defendant Bader's counterclaim. Defendants contend that to allow State Farm to intervene on defendants' behalf would, in effect, put State Farm on both sides of the lawsuit. On defendants' behalf, State Farm could argue defendant Bader was not negligent and plaintiff was negligent. In defending plaintiff on the counterclaim, counsel retained by State Farm would argue the converse—defendant Bader was negligent and plaintiff was not negligent. This internal conflict of interest, defendants argue, should preclude State Farm from interven-

---

7. State Farm counters that no conflict of interest exists. State Farm also argues that, if a conflict of interest exists, the conflict exists between State Farm and plaintiff and defendants have no standing to be plaintiff's vicarious defender. As demonstrated, defendants' interest and State Farm's interest not only are divergent, their interests may well conflict.

ing.[8] Missouri law does not support defendants' position.

Admittedly, some jurisdictions have refused to allow an insurer's intervention in circumstances similar to the present case because of the insurer's inherent conflict. *See, e. g., MFA Mut. Ins. Co. v. Bradshaw,* 245 Ark. 95, 431 S.W.2d 252, 255 (1968); *Allstate Ins. Co. v. Hunt,* 450 S.W.2d 668, 671–672 (Tex.Civ.App.1970), *aff'd* 469 S.W.2d 151 (Tex.1971). Missouri, however, has not resolved the conflict in that way.[9] Our Supreme Court was confronted with the conflict problem inherent in uninsured motorist cases in *Oates v. Safeco Ins. Co. of America, supra.* The facts are similar to the present case. An insured plaintiff sued an uninsured motorist defendant. The defendant filed a counterclaim. The insurer hired an attorney to defend plaintiff against the counterclaim. The plaintiff dismissed his claim. The defendant secured a judgment on his counterclaim. The insurer did not intervene in this action. In a subsequent suit, the insured plaintiff sued the insurer under the uninsured motorist provision of his policy. The insurer argued the judgment obtained against plaintiff in the prior action estopped plaintiff from contesting the issue of liability and damages in the subsequent action. The Court disagreed and permitted plaintiff to relitigate these issues in the subsequent action. *Id.* at 721. In doing so, the Court specifically acknowledged the possible conflict of an insurer who intervenes in an uninsured motorist case in which a counterclaim has been filed. *Id.* at 720. However, the Court did not disapprove of intervention. Indeed, even though the Court held the plaintiff was not bound by the prior judgment, the Court still tacitly approved the conclusion reached in *Wells* that an insurer who does not intervene will be bound by an unfavorable judg-

ment. *Id.* at 719–720. Thus, at present, our law gives tacit approval to the insurer's intervention even in the face of the insurer's possible conflict of interest.

 Finally, defendants suggest a new method for dealing with the problem of intervention in uninsured motorist cases, a method which would preclude State Farm's intervention in the case before us. Defendants argue that a change in joinder rules permits this court to hold that State Farm need not be bound by a judgment in the action below, and, thus, should not be allowed to intervene of right. Admittedly, the joinder rules controlling in all of the previously cited uninsured motorist cases have been modified. Formerly, a plaintiff was prohibited from joining a claim against an uninsured motorist with its claim against its insurer. Thus, the plaintiff could not bring the insurer into the lawsuit. *State ex rel. Cozean v. Meyer,* 449 S.W.2d 377 (Mo. App.1969). Our Supreme Court abolished this rule in *State ex rel. Farmer's Ins. Co., Inc. v. Murphy,* 518 S.W.2d 655 (Mo.banc 1975). In *Murphy,* the Court held first that the rule governing joinder of claim did not prohibit the joinder of the tort claim against the uninsured motorist with the joinder of the contract claim against its insurer. *Id.* at 668. The Court then addressed the question of whether the joinder of the insurance company and the tortfeasors constituted a misjoinder of parties. The Court concluded it did not. *Id.* at 662. In reaching its conclusion, the Court noted that the insurer could intervene in the action if it so desired citing *State v. Craig, supra; Wells v. Hartford Accident & Indemnity Co., supra* and *Beard v. Jackson, supra. Id.* at 663. The Court then stated:

---

**8.** State Farm, of course, is not actually in the present action on plaintiff's side. It has merely retained counsel to represent plaintiff on the counterclaim. Defendants' argument presupposes that, because this counsel is retained by State Farm, he will be unable to represent plaintiff competently if that representation requires him to be antagonistic to State Farm's interest. *See Oates v. Safeco Ins. Co. of Amer-*

*ica, supra* at 719–721. There is no indication in the record that counsel retained by State Farm has or will not properly and competently represent plaintiff's interest, and defendants have not explicitly made this charge.

**9.** Neither have the majority of other jurisdictions faced with the issue. *See Widiss, supra,* § 7.15, cases cited at n. 1 (1980 Supp.).

"It would be illogical to interpret our rules to mean that joinder by a plaintiff of a claim against an uninsured motorist and claims against the tortfeasors in the same automobile accident constitutes a misjoinder of parties, but that if the carrier in such a situation seeks by intervention to become a party, there is no misjoinder."

*Id.* at 664. Evidently, the court in *Murphy* intended no change in the intervention rules and was operating under the assumption that an insurance company who did not intervene would be estopped from relitigating issues decided in an action between its insured and an uninsured motorist. Admittedly, as defendants note, plaintiff now has the option of bringing in the insurer. However, nothing in *Murphy* indicates that the plaintiff's ability to join the insurer affects its right to rely on a judgment obtained in a case where it does not choose to join its carrier.[10] Indeed the only mention of intervention is a nod of approval to the rule established in *Wells. Id.* at 663. To reach the conclusion defendants urge, we would have to ignore the clear dictates of *Wells*, or at least carve out an exception to *Wells* and find that an insurer is no longer bound by a judgment in an action between its insured and an uninsured motorist if the uninsured motorist has filed a counterclaim.[11] Only if we were to find the insurer would not be bound could we stop the insurer from intervening. However, nothing in *Murphy* indicates that the rule in *Wells* should no longer prevail. *Murphy* deals with joinder, not intervention. Indeed, the context in which intervention is mentioned is a discussion by the court which quite sensibly implies that the rules governing joinder and the rules governing intervention ought to be parallel and consistent. The court concludes that one who can intervene ought not be precluded from being made a party by joinder. *Id.* at 664. If this approach is followed, an equally forceful argument can be made that one who can be made a party by joinder ought not be precluded from intervening. Thus, not only is the holding in *Murphy* an insufficient reason for our departing from past precedent on intervention, the reasoning of our Supreme Court indicates it may not favor such a departure.

We are constrained then to follow past precedent and its extensions. We hold that State Farm must be allowed to intervene of right in the action below. Any change in the intervention rules is properly left to our Supreme Court. State Farm, here, has established the three elements required by Rule 52.12. It must be allowed to intervene.

Judgment reversed and cause remanded.

SMITH and SIMON, JJ., concur.

---

10. Although a plaintiff may join the insurer and litigate the issues of liability, damages, *and* coverage in one lawsuit, an insurer who intervenes in a lawsuit between its insured and an uninsured motorist will not be allowed to inject the issue of coverage into that suit. It must take the action as it finds it. *See Beard v. Jackson*, 502 S.W.2d 416, 419 (Mo.App.1975).

11. Even carving out an exception to *Wells* for cases where an uninsured motorist defendant has filed a counterclaim might not be an effective procedural device for solving the problem. It might well compound the procedural difficulties in these cases. A defendant could file a counterclaim at any time prior to going to trial, even after the insurer had come into the case as an intervenor. Apparently, the trial court would then have to expel the intervening insurer from the case, even though the insurer had intervened as a matter of right. Procedural devices or rules would also have to be developed to cover the situation where a counterclaiming defendant dismisses his counterclaim after trial begins.