Kristen Jean Nicole WHITEHEAD, et al., Respondent,

v.

LAKESIDE HOSPITAL ASSOCIATION, et al., Respondent,

Missouri Hospital Plan, Intervenor–Appellant,

Robert L. Blackann, D.O., Respondent,

Aline Stull, Respondent.

Kristen Jean Nicole WHITEHEAD, et al., Respondent,

v.

LAKESIDE HOSPITAL ASSOCIATION, et al., Respondent,

Missouri Hospital Plan, Intervenor–Appellant,

Robert L. Blackann, D.O., Respondent,

Aline Stull, Respondent.

Kristen Jean Nicole WHITEHEAD, et al., Respondent,

v.

LAKESIDE HOSPITAL ASSOCIATION, et al., Respondent,

Missouri Hospital Plan, Appellant,

Robert L. Blackann, D.O., Respondent,

Aline Stull, Respondent.

Nos. WD 45105, WD 45324, WD 45511.

Missouri Court of Appeals, Western District.

Nov. 10, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 1992.

Application to Transfer Denied Jan. 26, 1993.

**476**

Ronald R. McMillin, R. Max Humphreys and Dana L. Frese, Jefferson City, for Missouri Hospital Plan.

Max W. Foust and James P. Frickleton, Kansas City, for Kristen Jean Nicole Whitehead.

Paul Douglas Cowing, Kansas City, for Lakeside Hosp. Ass'n.

Kirk J. Goza, Kansas City, for Robert L. Blackann.

Sally H. Harris, Kansas City, for Aline Stull.

Before ULRICH, P.J., and SHANGLER and FENNER, JJ.

SHANGLER, Judge.

This proceeding consolidates three separate appeals by Missouri Hospital Plan [MHP], a non-party, from two separate orders denying motions to intervene in the circuit court litigation, Kristen Whitehead, by her mother, next friend and individually, Karen Whitehead v. Lakeside Hospital and others, and from the judgment on the merits of the litigation. The course of that litigation, as well as the initiatives of MHP to participate, follow in sequence.

The plaintiffs Whitehead brought a medical malpractice action against Lakeside Hospital and other health care providers for brain damage injury to Kristen relating to her birth in February 1987. At the time of the birth, Lakeside Hospital had a medical malpractice insurance policy with MHP, which was a claims policy. In order for the coverage to apply, the policy required that a claim be made during the policy period. The policy period of the professional liability policy issued by MHP to Lakeside was January 1, 1987 to January 1, 1988. The malpractice action was filed on February 10, 1989. MHP denied coverage on the ground that no claim was made during the policy period. However, MHP did tender, and Lakeside Hospital accepted, a defense of the suit under a reservation of rights. MHP engaged the firm of Blackwell, Sanders, Matheny, Weary and Lombardi to defend Lakeside in the suit.

In order to resolve the dispute over coverage, MHP filed a petition for declaratory judgment, and the Whiteheads were granted intervention. [The declaratory judgment action was still pending in the circuit court at the time of oral arguments in this court.] MHP then filed in the malpractice action an application for leave to intervene "Solely to Apply for a Stay of Proceedings." The application requested the trial court to stay the Whiteheads' malpractice suit pending determination of the declaratory judgment action. The request to intervene was denied on December 1, 1989. This order was not appealed and is not before us.

On June 6, 1991, the Whiteheads entered into a settlement agreement under § 537.-065, RSMo 1986, with Lakeside Hospital whereby the Whiteheads promised to limit the collection of any judgment to the assets of any insurer which insured the legal liability of Lakeside, including any proceeds available under the liability insurance policy. The agreement included the consent of Lakeside to a separate trial on the issues of liability and damages and to waive a jury. Lakeside also agreed not to defend the suit, or present evidence, or cross-examine any witnesses at trial. In the event of judgment in favor of the Whiteheads, Lakeside agreed not to request a new trial or to appeal. In event of a judgment against Lakeside in excess of $1,000,000, Lakeside agreed to unconditionally assign to the Whiteheads its right to any cause of action against MHP for bad faith, refusal to settle or other action.

In accordance with the terms of the settlement agreement, the Blackwell, Sanders firm withdrew as counsel for Lakeside in the malpractice action.

The settlement agreement was approved by the court on June 6, 1991. In response to the agreement event, MHP sought again to intervene in the malpractice action to protect its interests as a potential indemnitor under the insurance policy. Intervention was denied on July 18, 1991. The notice of appeal of that order was filed on July 26, 1991. [*Appeal I*].

On August 15, 1991, the malpractice action was heard by the circuit court, and on August 16, 1991, a judgment for $8,500,000 was entered for the Whiteheads against Lakeside. On September 21, 1991, MHP appealed that judgment, "individually and on behalf of Lakeside only and solely by virtue of its position as its possible but disputed indemnitor pursuant to the aforementioned insurance policy and 'settlement agreement.'" [*Appeal II*].

On August 29, 1991, MHP sought to intervene in the malpractice action for the purpose of filing a motion to vacate judgment and for new trial. Intervention was once again denied. On November 19, 1991, MHP appealed that order, "individually and on behalf of Lakeside only and solely by virtue of its position as Lakeside's possible but disputed indemnitor." [*Appeal III*].

### Appeal I and Appeal III

The first contention is that the denial of the successive applications by MHP to intervene in the Whiteheads' medical malpractice suit was error. [*Appeal I and Appeal III*]. The first overture for intervention to contest coverage was in response to the settlement agreement between the Whiteheads and Lakeside. [*Appeal I*]. The second was in response to the judgment entered for the Whiteheads after evidence was received under the plan of the settlement agreement, and for the purpose of a motion to vacate judgment and for a new trial. [*Appeal III*].[1]

The assertion of right to intervene, then as now, was to "protect its interests as potential indemnitor under its insurance policy." MHP argues that the effect of the settlement agreement by Lakeside to forgo the right to defend the suit against the Whiteheads, "to cross-examine witnesses or to contest the liability and damages issue" is to leave the insurer as "the only real party in interest" so as to entitle MHP to intervention, both under Rule 52.12(a) and as a matter of due process of law.

█ Rule 52.12(a) grants to anyone intervention as of right in an action:

. . . . .

(2) when an applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The rule gives to anyone who comes within its terms the absolute right to inter-

1. The trial court entered judgment on the malpractice action on August 16, 1991. MHP filed its last application to intervene, as well as a motion to vacate judgment and for new trial, on August 29, 1991, thirteen days later. The trial court never ruled the application or the motion, and they lapsed. MHP appealed the judgment for the Whiteheads on September 23, 1991, and the denial of the application to intervene on July 26, 1991. The Whiteheads argue that since under Rule 75.01 the court retains control of its judgment for only thirty days, its jurisdiction to act on the application to intervene lapsed on September 15, 1991. Accordingly, the judgment was then final for purpose of appeal and the notice of appeal was due not later than ten days thereafter. Rule 81.04(a). Thus, the notice of appeal not filed until November 19, 1991 was untimely and *Appeal III* must be dismissed. They argue that the motion for new trial was to no effect under Rule 78.04 to extend the finality of the judgment for the purpose of appeal because that rule applies to a judgment entered upon a jury verdict, and the Whitehead claims were tried to the court.

This argument neglects the effect of Rule 73.01(a)(3) which allows a party in a non-jury case to move for a new trial. In such case, the judgment does not become final for the purpose of appeal for ninety days or upon earlier disposition of the motion by the court. Rule 81.05(a); *Crooms v. Ketchum,* 379 S.W.2d 580, 586 (Mo.1964).

vene, a right that may be compelled by mandamus or redressed by appeal. *State ex rel. Aubuchon v. Jones,* 389 S.W.2d 854, 860–61[4–7] (Mo.App.1965); *State ex rel. Ashcroft v. American Triad Land Co.,* 712 S.W.2d 62, 64[1] (Mo.App.1986). To come within the terms of the rule, the application must satisfy its three enumerations: (1) an interest, (2) a disposition of the action that may impede the ability of the applicant to protect that interest, and (3) inadequate representation of that interest. *State ex rel. Ashcroft,* 712 S.W.2d at 64.

The "interest" that qualifies for intervention as of right in an action "means a direct and immediate claim to, and having its origin in, the demand made or proceeds sought or prayed by one of the parties to the original action ... [T]he 'interest' must be such an immediate and direct claim upon the very subject matter of the action that intervenor will either gain or lose by the *direct operation* of the judgment that may be rendered therein." *State ex rel. Farmers Mut. Auto Ins. Co. v. Weber,* 364 Mo. 1159, 273 S.W.2d 318, 321[4] (banc 1954).

MHP argues that shorn by the settlement agreement of the right to present evidence, or to cross-examine, or to appeal, and on terms that relieves Lakeside of any risk of personal liability, the putative insured in effect acceded to the entry of an uncontested judgment. Thus, the interest of MHP as potential indemnitor under its policy to Lakeside is not only directly affected by the judgment, but MHP alone remains to protect that interest.

■ The liability of an insurer as potential indemnitor of the judgment debtor does not constitute a direct interest in such a judgment so as to implicate intervention as of right in that action. Rule 52.12(a). That is because the insurer does not either "gain or lose from the direct operation of that judgment." *State ex rel. Farmers Mut. Auto Ins. Co. v. Weber,* 364 Mo. 1159, 273 S.W.2d at 321[4]. An insurer does not have an interest that implicates the rule until the insurer is called upon to make indemnity as to the judgment. It is when a claim for potential indemnity becomes a

demand for actual indemnity that the direct interest [right] of the insurer to intervene in the other action accrues. That "interest" is "only, and nothing more than, the right to some day in some proper forum and cause litigate its liability upon its above policy." 364 Mo. 1159, 273 S.W.2d at 322.

■ There has been no call upon MHP to indemnify the judgment against Lakeside nor suit to enforce the obligation to make indemnity. MHP would be entitled to litigate the question of coverage in any such proceeding. 364 Mo. 1159, 273 S.W.2d at 322; *Meyers v. Smith,* 375 S.W.2d 9, 13[2, 3] (Mo.1964). The right to litigate the question is also open to an insurer by declaratory judgment petition, an action independent of the tort proceeding against the putative insured. *State ex rel. Farmers Ins. Co.,* 364 Mo. at 1169, 273 S.W.2d at 322; *State ex rel. Mid–Century Ins. Co. v. McKelvey,* 666 S.W.2d 457, 459 (Mo.App. 1984). Indeed, that is the forum already selected by MHP to litigate the question of whether the Whiteheads claims come within the coverage of its policy to Lakeside.

MHP cites, by analogy of principle, the right of an insurer under our law to intervene in a tort action brought by its insured against an uninsured motorist. *See Oates v. Safeco Ins. Co. of Am.,* 583 S.W.2d 713, 719–20[12] (Mo. banc 1979); *Frost v. White,* 778 S.W.2d 670, 672[2] (Mo.App. 1989); *Alsbach v. Bader,* 616 S.W.2d 147, 150[2] (Mo.App.1981). The rationale that sustains the right of the insurer to intervene in the action of the insured is that the interest of the insurer in the determination of liability and damages between the insured and the uninsured motorist suffices to warrant intervention. *Alsbach v. Bader,* 616 S.W.2d at 150[2]. That rationale rests on the antecedent premise that the insurer's interest will not otherwise be adequately represented in the litigation. *Id.* at 152[7]. Moreover, the neglect of the insurer to intervene will estop the insurer from the relitigation of the issues of liability and damages. *Frost v. White,* 778 S.W.2d at 672[2].

These premises of the interest of an insurer and of intervention as of right in an action against the insured are of *sui generis* application to the distinctive uninsured motorist coverage. An insurer, nevertheless, who intervenes in an action between its insured and an uninsured motorist may not insinuate the issue of coverage into that action. The insurer must take the action as it finds it. *Alsbach v. Bader*, 616 S.W.2d at 155, n. 10. That is because, as our discussion notes, the insurer has a forum by declaratory judgment action or in the action to compel indemnity for the judgment that affords the insurer full scope to protect its interests against the contention of coverage, and hence liability for the judgment. Thus, contrary to the premises that justify intervention as of right in cases of uninsured motorist actions, the non-intervention in an action against the insured by an insurer who contests coverage does not estop the insurer from later litigating that issue. *State ex rel. Farmers Mut. Auto Ins. Co. v. Weber*, 273 S.W.2d at 321–22[4].

Nor does the incidence of the settlement agreement between the Whiteheads and Lakeside introduce any new cogency to the argument for intervention already rejected.

The application for intervention for the purpose of litigating the question of coverage was properly denied. *Appeal I* is determined against the insurer, MHP.

MHP argues nevertheless that the fact of a settlement agreement, whereby virtual consent was to the entry of an "uncontested judgment" that left the putative insured with "no financial interest at stake," introduces an "interest" for intervention as of right not present in *Weber*. The incidence of a settlement agreement under § 537.065 in the action is irrelevant to the *Weber* rationale that the interest of an insurer to litigate a disputed coverage does not become a legal right *in that action* until the insurer is called upon to make indemnity under the policy.

It is evident that MHP's preoccupation with the settlement agreement is not to justify intervention as of right in the malpractice action in order to contest coverage.

It is to be restored to the defense of the Whiteheads' claims as before under the reservation of rights. The motion filed by MHP in response to the settlement agreement, as well as the motion filed after adjudication to vacate the judgment and for new trial each sought to intervene "in order to adopt as its own the claims, defenses and pleadings previously filed by Blackwell, Sanders on behalf of defendant Lakeside." The motions condemn the settlement agreement as "collusive" and reassert the interest as "potential indemnitor" and "only party in interest" for the right of MHP to intervene to defend the malpractice action.

 An insurer may not reserve the right to disclaim coverage and at the same time insist upon controlling the defense. *Butters v. Independence*, 513 S.W.2d 418, 425[5] (Mo.1974); *Cologna v. Farmers & Merchants Ins. Co.*, 785 S.W.2d 691, 700[3] (Mo.App.1990). Moreover, the insurer's unjustified refusal to defend upon the ground that the claim is not covered by the policy relieves the insured from the contractual obligation not to settle so that the insured is free to go its own way, and to make a reasonable settlement or compromise without the loss of the right to recover on the policy. *Cologna v. Farmers & Merchants Ins. Co.*, 785 S.W.2d 691, 701 (Mo.App.1990). The Whiteheads and Lakeside chose to accommodate their settlement under § 537.065, whereby a claimant and tortfeasor may contract to limit recovery to specified assets or insurance coverage. It is a method of settlement that is valid if free of collusion or fraud. *Cologna v. Farmers & Merchants Ins. Co.*, 785 S.W.2d at 701.

 The "collusion" aspersion that the motions to intervene cast against the settlement agreement is prompted by the consent of Lakeside to present no evidence, not to cross-examine witnesses and to waive the right to appeal any judgment. It is an issue that although the insurer is entitled to litigate, may no more insinuate into the malpractice action than it may the issue of coverage. It is a subject for redress by petition for declaratory judgment

or in the proceedings to enforce the indemnity obligation to the insured. *Butters v. Independence*, 513 S.W.2d at 425[9]; *Cologna v. Farmers & Merchants Ins. Co.*, 785 S.W.2d at 701[5].

MHP repeats plaintively that the demand by Lakeside that counsel engaged by MHP to defend the malpractice claim withdraw after Lakeside had accepted that defense under reservation of rights was a breach of its duty to cooperate under the policy. The insistence upon the intervention device of Rule 52.12(a), after the insurer has refused full defense to the insured on the ground that the claim is not within the coverage of the policy, as the means to litigate breaches of obligations owed by the insured to the insurer under the policy, bespeaks misunderstanding of the legal effects of refusal.

 The decision by the insurer, as to whether it will refuse to defend because the claim upon which the action against the insured grounded is outside the coverage of the policy, is attended with risk. Where the claim is actually outside the policy coverage, the refusal of the insurer to defend is a justified refusal, the insurer is not guilty of a breach of contract and incurs no legal liability by its action. *Marshall's U.S. Auto Supply, Inc. v. Maryland Casualty Co.*, 354 Mo. 455, 189 S.W.2d 529, 531[1, 2] (1945); *Ira E. Berry, Inc. v. American States Ins. Co.*, 563 S.W.2d 514, 516[5, 6] (Mo.App.1978).

Where the claim comes within the policy coverage, and so within the duty of the insurer to defend, the refusal of the insurer to do so is unjustified, and the insurer is guilty of a breach of contract. *Butters v. Independence*, 513 S.W.2d at 425[5–7]. That the refusal of the insurer to defend on the ground that the claim is outside the policy is an honest mistake, nevertheless

constitutes an unjustified refusal and renders the insurer liable to the insured for all resultant damages from that breach of contract. *Kelso v. Kelso*, 306 S.W.2d 534, 540[7] (Mo.1957). The legal consequences to the insurer from the breach of contract for unjustified refusal to defend on the ground of noncoverage include the loss of its contractual right to demand that the insured comply with certain prohibitory as well as affirmative policy provisions.[2]

 Intervention as of right Rule 52.-12(a) is indeed the procedure open to an insurer to meliorate the risk of consequences that attends the refusal to defend on the ground of noncoverage. An insurer who seeks a declaratory judgment on the question of coverage may apply to intervene in the action against the insured solely for a stay of that proceeding until the adjudication of the declaratory judgment. *State ex rel. Mid–Century Ins. Co. v. McKelvey*, 666 S.W.2d at 459. It is a right of procedure [rather than of interest] that mandamus will compel. *Id.* In fact, MHP made such an application, but was denied. The order was not appealed, and so cannot be redressed here.

Intervention under Rule 52.12(a) is not available to MHP to litigate the coverage question in the malpractice action, or to restore to MHP the control of the defense it forfeited by the denial of coverage, or to impugn the fairness of the settlement agreement proceedings and judgment. These are interests of liability properly litigable in an action for declaratory judgment, statutory garnishment, or even by the insured for reimbursement. *See, e.g., Kelso v. Kelso*, 306 S.W.2d 534; *Ira E. Berry, Inc. v. American States Ins. Co.*, 563 S.W.2d 514.

**2.** The specific legal consequences that attend an insurer's unjustified refusal to defend on the ground of noncoverage arrange into four groupings: (1) the creation of positive obligations on the part of the insurer; (2) the loss by the insurer of certain positive rights previously possessed; (3) the loss by the insurer of its right to demand the insured's compliance with certain prohibitory policy provisions; and (4) the loss by the insurer of its right to demand the insured's compliance with certain affirmative policy provisions. The subject is fully treated in 14 COUCH ON INSURANCE 2d §§ 51:44–51:77 (Revised ed. 1982); Annotation, *Liability Insurer Refusal to Defend*, 49 A.L.R.2d 694 (1956 & Supp.1987). Among the rights that the insurer forfeits are, as the opinion notes, the control of the defense and the right to invoke the policy clause that prohibits settlement by the insured without the consent of the insurer. Annotation, 49 A.L.R.2d at 737–751; *Butters v. Independence*, 513 S.W.2d at 425[5–7].

This rule of decision notwithstanding, MHP cites *Kollmeyer v. Willis*, 408 S.W.2d 370 (Mo.App.1966), for the holding that the interest of an insurer as indemnitor suffices for standing to move to set aside a default judgment against the insured.[3] It is the rule that a stranger to the record who was neither privy nor party to the action, nor prejudiced by the judgment, may not apply to open or vacate the judgment. *Dorris v. Mulina*, 738 S.W.2d 124, 127[1, 2] (Mo.App.1987); 49 C.J.S., *Judgments* § 293(b) (1947).[4] *Kollmeyer* acknowledges the rule that "a stranger to the record has no right to move for vacation of a judgment." 408 S.W.2d at 378. The court nevertheless found that the interest of the insurer Western Fire Insurance Co. as indemnitor of the defendant insured, against whom a default judgment was taken, sufficed for standing to move to set aside the default judgment. The court expressed as its rationale:

> The automobile liability policy issued by Western to defendant was essentially a contract of indemnity; the relationship between the parties to the contract was that of indemnitor and indemnitee; and, if the default judgment had not been set aside, Western would have been bound by that judgment as to all issues necessarily determined thereby, including the issue as to defendant's liability to plaintiff and the amount of damages to be awarded to plaintiff's injuries. *Id.* at 378–79[6–9].

That statement of principle is sound in circumstances where the insurer is simply indemnitor and does not deny that the claim against the insured comes within the coverage of the policy. However, these were not the circumstances in *Kollmeyer*. As the opinion notes, Western had instituted a declaratory judgment action which asserted that the policy issued to the insured defendant was "void *ab initio*" and denied coverage. *Id.* at 379[10]. In such instance, of course, the insurer forfeited its right to control the litigation against the insured, so that any judgment would not bind the insurer on the issue of coverage which it had reserved.

The proper statement of the rule is found, rather, in the case *Kollmeyer* cites, but misapplies, *Finkle v. Western Auto. Ins. Co.*, 224 Mo.App. 285, 26 S.W.2d 843, 849[11] (1930):

> The general rule is that, *where one is bound to protect another from liability, he is bound by the result of litigation to which the other is a party, provided he had* notice of the litigation, and *an opportunity to control and manage it,* and that the judgment rendered therein is conclusive in the subsequent action upon the indemnity contract as to all questions and issues necessarily determined therein. [emphasis added]

The insurer, who relinquished the right to control the defense of the claim against the insured, no longer had any direct and protectible interest in the suit against the insured. It was the function of the declaratory judgment action, then still pending, to independently and finally adjudicate the forthwith rather than on a future occasion." RESTATEMENT (SECOND) OF JUDGMENTS § 76(1)–(2) (1982).

Our discussion shows that the interest of an insurer, in the circumstances of MHP, does not suffice to intervene in the action between the plaintiff and the insured. That very rationale denies MHP standing to question the effect of the judgment on another, Lakeside. The judgment in favor of the Whiteheads and against Lakeside, as such, is not *res judicata* as to the insurer, and so jeopardizes no protectible interest of MHP to litigate the question of coverage under the policy. That interest remains fully protectible in the declaratory judgment action still pending, or even thereafter in other proceedings.

---

**3.** We assume for purpose of response that the judgment entered under the settlement agreement, basically uncontested, was a judgment by default, and hence within the rationale of *Kollmeyer v. Willis*, 408 S.W.2d 370.

**4.** The rationale that, generally, a judgment is of no legal concern to one who is neither a party to it nor otherwise bound by it under the rules of res judicata is that, so far as a third person is concerned, "since the judgment has no legal effect on him, he has no standing to question whether it might have other legal effects." RESTATEMENT (SECOND) OF JUDGMENTS § 76, comment a (1982). An exception is made when "(1) The existence of the judgment jeopardizes a protectible interest of his; and (2) [t]he character of his interest warrants his being given relief

liability of the insurer to the insured under the policy, and hence the liability for the default judgment.

*Kollmeyer* is all the more egregious in that it continues to treat the insurance policy as a contract still intact even after breach by the insurer by failure to defend the action against the insured. *Id.* at 379[10]. However, the legal effect of the refusal of the insurer to defend because the claim does not come within the coverage of the policy is a breach of contract. It is a breach that relieves the insured of the contractual obligation not to settle without the consent of the insurer without the loss of the right to recover on the policy. *Cologna v. Farmers & Merchants Ins. Co.*, 785 S.W.2d at 700[3]. On established principles, therefore, the insurer in *Kollmeyer* had no standing to move to set aside the judgment against the insured.

It is to be said that the circumstances in *Kollmeyer* were singular and confounding. It is evident that the opinion of the court was meant to do right among the principals. The rationale, however, slights governing rules of decision and does not subserve as apt precedent.

*Appeal III* is ruled against MHP.

### Appeal II

MHP also undertook a direct appeal from the judgment entered against Lakeside under the plan of the settlement agreement. MHP does not mention this appeal nor brief its merits. *Appeal II* is deemed abandoned. It is foregone from our discussion that MHP was not a party aggrieved by the judgment for the Whiteheads against Lakeside and so is without interest or standing to appeal. § 512.020, RSMo 1986.

*Appeal II* is dismissed.

The orders of the trial court denying intervention are affirmed.

All Concur.