**Brierly Ann STAFFORD, Respondent,**

v.

**Kenneth Neal KITE, Jr.,**
**Defendant Pro Se,**

and

**Traders Insurance Company, Appellant.**
**No. WD 57598.**

Missouri Court of Appeals,
Western District.

June 27, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 1, 2000.

Application for Transfer Denied
Oct. 3, 2000.

Paul Paxton Hasty, Jr., Overland Park, KS, for appellant.

Bruce A. Bailey, Warrensburg, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, PAUL M. SPINDEN, Judge and THOMAS H. NEWTON, Judge.

JOSEPH M. ELLIS, Judge.

On June 19, 1998, Brierly Stafford traveled southbound on Highway 71 in Cass County, Missouri. Kenneth Kite, driving his vehicle northbound in the southbound lanes, collided head on with Stafford's vehicle. As a result of the accident, Stafford suffered multiple injuries and incurred medical expenses in excess of $22,000. Stafford's passenger died of his injuries. Kite pled guilty to vehicular manslaughter and assault in the second degree; the court sentenced him to seven years on each count in the Missouri Department of Corrections.

Kite's automobile insurance carrier, Progressive, took the position that its insurance policy on Kite's vehicle was not in effect on the date of the accident, having been previously cancelled for non-payment.[1] Traders Insurance Company (Traders) carried insurance on Stafford's vehicle at the time of the accident. The policy included an uninsured motorist provision. According to this provision, Traders agreed to pay compensatory damages which Stafford was legally entitled to recover from the owner/operator of an uninsured motor vehicle because of bodily injury. On August 31, 1998, Stafford's counsel sent a demand letter to Dingeldein Insurance Agency, Stafford's insurance agent. Stafford's counsel indicated that his preliminary investigation revealed that Kite was uninsured at the time of the accident, and, therefore, he stated that Stafford was entitled to collect from her own insurance policy under the uninsured motorist provision. The letter included a formal demand for the payment of $75,000.00 under the uninsured motorist provision of her policy.

Stafford filed a petition for damages against Kite on May 26, 1999. Progressive sent a letter to Stafford's counsel on June 4, 1999, denying coverage. The letter stated that Kite's insurance policy was cancelled on May 4, 1998 for non-payment. On June 11, 1999, Traders filed a motion to intervene in the action pursuant to Rule 52.12. In a memorandum in support of its motion to intervene, Traders indicated that Stafford notified Traders that Kite was an uninsured motorist at the time of the accident and that she had filed suit against him. Traders claimed it was entitled to intervene as a matter of right. On June 22, 1999, Kite filed a *pro se* response to Stafford's petition, contesting liability based on information that Stafford was legally intoxicated at the time of the accident.[2]

When Stafford would not voluntarily agree to its intervention, Traders filed a Notice of Hearing on the motion on July 21, 1999, calling the motion up for hearing

---

1. Although the hearing transcript indicates that Progressive provided counsel for Traders Insurance Company with a letter of denial, no documentation of Progressive's denial of coverage was submitted in the Legal File. The only mention of this fact is in a letter from Stafford's attorney to Dingeldein Insurance Agency, dated August 31, 1998, in which he stated that his "preliminary investigation indicates that Mr. Kite was uninsured at the time

of the wreck...." Traders informed the trial court that it received notice only in a companion case, *Cobb v. Kite*, Case No. 98–CV–021323, in the Circuit Court of Jackson County, in which Progressive informed Traders that it declined to defend Kite.

2. Kite was incarcerated at all times during the pendency of this action.

on August 9, 1999. The next day, July 22, 1999, Kite made an offer of judgment, pursuant to Rule 77.04, in the amount of $200,000 for personal injuries. Stafford accepted the offer of judgment on July 24, 1999 and the offer, acceptance and a joint motion for entry of judgment on the offer and acceptance were presented to the trial court on July 24, 1999. The trial court entered a consent judgment in favor of Stafford and against Kite in the amount of $200,000 on the same day, July 24, 1999. On August 5, 1999, Stafford's counsel sent a letter to Traders advising that a consent judgment had been entered against Kite.

On August 9, 1999, the circuit court held the hearing on Traders' motion to intervene. At the hearing, Stafford argued that Traders did not allege or establish that it had an interest in the case because it never conceded that Kite was uninsured. Traders contended that it had a right to intervene regardless of the settlement between Stafford and Kite because it could be bound on the issues of liability and damages. During the hearing, counsel for Stafford informed the court, and his opposing counsel, that he had filed a suit that day against Traders for breach of contract and vexatious refusal to pay. The court denied Traders' motion to intervene. This appeal followed.

■ Our review of the trial court's denial of a motion to intervene is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Pennel v. Criger*, 936 S.W.2d 905, 907 (Mo.App. W.D.1997). We will reverse the trial court's judgment if it erroneously declares or applies the law. *Ballmer v. Ballmer*, 923 S.W.2d 365, 368 (Mo.App. W.D.1996).

■ In its sole point on appeal, Traders asserts the trial court erred in denying its motion to intervene because it had a right, as an uninsured motorist carrier having notice of the action against an al-

legedly uninsured motorist, to intervene in the action. A party seeking intervention as a matter of right under Rule 52.12(a) must file a timely motion[3] and show three elements: 1) an interest relating to the property or transaction which is the subject of the action; 2) that the applicant's ability to protect such interest is impaired or impeded; and 3) that the existing parties are inadequately representing the applicant's interest. *Rule 52.12(a)*. The burden is on Traders, the intervenor, to show that all of the elements required for intervention as of right pursuant to Rule 52.12(a) are satisfied. *Augspurger v. MFA Oil Co.*, 940 S.W.2d 934, 937 (Mo. App. W.D.1997); *Ballmer*, 923 S.W.2d at 368. "If an applicant meets these requirements, thereby satisfying the requisite burden of proof, the right to intervene is absolute." *Borgard v. Integrated Nat'l Life. Ins. Co.*, 954 S.W.2d 532, 535 (Mo. App. E.D.1997).

"[O]ur courts have uniformly held or stated that an uninsured motorist carrier is entitled to intervene in an action between its insured and an uninsured motorist." *Alsbach v. Bader*, 616 S.W.2d 147, 150 (Mo.App. E.D.1981); *See also Frost v. White*, 778 S.W.2d 670, 672 (Mo.App. W.D. 1989). This court has previously held that an uninsured motorist carrier was entitled to intervene in a lawsuit after judgment had been entered, even when the insurer did not move to intervene until after the entry of judgment. *Frost*, 778 S.W.2d at 674. "[I]t is not debatable that the insurance carrier has a right under Missouri law to intervene in a case where a claim is made that there is an uninsured motorist as a named defendant." *Id.* at 672. An "insurer must intervene in a suit against the uninsured motorist if it wishes to raise defenses on issues of liability and damages." *Id.*

In an uninsured motorist case, an insurer attempting to intervene as a matter of

---

**3.** Although Stafford argued at the hearing that Traders' motion was not timely filed, we note that the motion was filed 18 days after Stafford filed her petition, and the trial court found that there was no question that the motion was timely filed.

right usually satisfies the first two elements required under Rule 52.12(a). *Alsbach*, 616 S.W.2d at 150.

The insurer's "interest" in the determination of liability and damages between its insured and the uninsured motorist is sufficient to warrant intervention, *e.g.*, *State ex rel. State Farm Mutual Automobile Ins. Co. v. Craig*, 364 S.W.2d 343, 346–348 (Mo.App.1963), and, disposition of the issues of liability and damages will "impede (the insurer's) ability to protect that interest" because the insurer will be estopped from relitigating those issues in a subsequent action. *E.g., Wells v. Hartford Accident and Indemnity Co.*, 459 S.W.2d 253 (Mo. banc 1970).

*Id.*

■ First, Traders must establish that it has an interest in the subject matter of the action. *Rule 52.12(a)*. An uninsured motorist carrier need not admit liability or concede that the motorist lacked insurance in order to have an interest in the action. *See Beard v. Jackson*, 502 S.W.2d 416, 418–19 (Mo.App. E.D.1973). Traders acknowledged in its memorandum in support of the motion to intervene that Kite was possibly an uninsured motorist. In a situation involving an uninsured motorist policy provision, the insurer carrying the uninsured motorist policy " 'may be bound' by a judgment rendered against the uninsured motorist in the sense it may not dispute the liability of the uninsured motorist or the amount of damages." *State ex rel. State Farm Mutual Automobile Ins. Co. v. Craig*, 364 S.W.2d 343, 348 (Mo.App. S.D.1963).[4] Where an insurer seeks to intervene as a matter of right in an action between the insured and an uninsured motorist, the insurer's interest in the determination of liability and damages suffices to meet the "interest" requirement of Rule 52.12(a)(2). *Alsbach*, 616 S.W.2d at 150; *See also Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 479 (Mo.App. W.D.1992). Traders had an interest in the determination of liability and damages because it had the potential to be bound by determinations of liability and damages against Kite. Therefore, we find that Traders established an interest in the subject matter of the action.

■ Second, Traders must show that, without intervention, its ability to protect its interest was impaired or impeded. *Rule 52.12(a)*. An uninsured motorist carrier who has notice of the litigation and an opportunity to intervene and defend in an action where the insured litigates the issues of liabilities and damages of an uninsured motorist will be estopped from relitigating the issues decided in the action. *Wells v. Hartford Accident and Indemnity Co.*, 459 S.W.2d 253, 259 (Mo. banc 1970). Traders had notice of Stafford's litigation against Kite and filed a motion to intervene. At the hearing on its motion, counsel for Traders argued that Traders' status as a non-party to the action precluded it from raising any defenses to protect its interest in the potential payment of any judgment against Kite. Although Kite disputed the extent of his liability to Stafford for her damages, upon Traders' motion, he immediately entered into an offer of judgment with Stafford to conclude his liability. Unless Traders was a party to the proceeding, it would not be in a position to dispute liability or damages or negotiate on its own behalf. Traders' interest in the litigation will be impeded if it is not allowed to intervene in the action because it will be estopped from relitigating issues of liability and damages determined in the present action in any subsequent action. *Alsbach*, 616 S.W.2d at 150; *Wells*, 459 S.W.2d at 259.

Third, Traders must show that the parties to the action inadequately protected its interests. *Rule 52.12(a)*. In an uninsured motorist claim, the plaintiff's insurance carrier stands in the position of the uninsured motorist on the issues of liability

---

4. The court in *Craig* held an uninsured motorist insurance carrier possessed a sufficient interest in the outcome of the action to intervene as a matter of right. *Id.* at 349.

and damages. § 379.203.1.[5] In this case, Kite was potentially uninsured; his insurance carrier had denied coverage. Traders stands in Kite's position on the issues of liability and damages. Kite was incarcerated and acting *pro se.* There was no indication that he sought to protect Traders' interests as a potential payor. Stafford and Traders possessed contrary interests, as Traders potentially stood in the position of the tortfeasor against whom Stafford claimed damages. While Traders did not articulate every nuance of the uninsured motorist relationship in its suggestions in support of its motion, clearly its interests were not protected by any party in the action at the time of the hearing.

▇ Traders satisfied all three elements of Rule 52.12(a), and, therefore, it was entitled to intervene as a matter of right. The only remaining question is the effect of the entry of the consent judgment prior to the hearing on Traders' motion to intervene. The parties have not cited, and we have not found, any cases with identical facts. However, *Frost v. White* involved a somewhat similar situation. In that case, John Frost was riding as a passenger in an automobile being driven by John Gibson and rented from Alamo Rent–A–Car. *Frost,* 778 S.W.2d at 671. A truck operated by Hubert White collided with the car and Frost was injured. *Id.* White had no liability insurance on his vehicle. *Id.* Liberty Mutual insured the Alamo car and the policy included uninsured motorist coverage. *Id.*

Frost filed suit against White on November 8, 1988. *Id.* White was served on November 12, 1988, but he did not enter an appearance or file an answer. *Frost,* 778 S.W.2d at 671. On December 19, 1988, however, the case was called for trial, White appeared by an attorney and testified in person as a witness called by Frost. *Id.* At the conclusion of the trial, the court entered judgment against White and in favor of Frost for $600,000 and in favor of Frost's wife for loss of services in the amount of $150,000. *Id.* The formal judgment entry was signed December 22, 1988. *Id.*

Liberty Mutual was aware at all times that White was uninsured. *Id.* It was also aware that suit had been filed because Frost's attorney had sent it a copy of the petition on November 16, 1988. *Frost,* 778 S.W.2d at 671. However, it did not know when White was served, nor did it have notice of the trial setting. *Id.* Liberty learned of the judgment in the first week of January 1989 when it received a letter from Frost's attorney advising of the judgment. *Id.* On January 17, 1989, Liberty Mutual moved to intervene in the case for the purpose of filing a motion to set aside the judgment of December 22, 1988. *Id.* The trial court denied the motion, and Liberty Mutual appealed. *Id.*

On appeal to this court, we noted initially that "it is not debatable that the insurance carrier has a right under Missouri law to intervene in a case where a claim is made that there is an uninsured motorist as a named defendant." *Frost,* 778 S.W.2d at 672. We found that where intervention is sought as of right, the trial court has no discretion in the matter other than a finding that the application was not timely presented. *Id.* We went on to hold that the timeliness of Liberty Mutual's post-judgment motion to intervene should be determined on the basis of two factors, first, whether substantial justice mandates allowance of intervention, and second, whether existing parties will be prejudiced if intervention is permitted. *Id.* at 673. We expressly declared that denial of intervention on the basis that the movant had been careless or dilatory in failing to move for intervention promptly was not appropriate. *Id.* at 673–74. Accordingly, we reversed the trial court's order denying Liberty Mutual's motion to intervene and remanded with directions that the trial court grant the motion. *Id.* at 674. As a result, Liberty Mutual was able to intervene for purposes of moving to set aside the judgment. *Frost,* 778 S.W.2d at 671.

5. All statutory references are to RSMo (1994) unless otherwise noted.

We find the reasoning of *Frost* applicable to the case at bar, and even more compelling based on the facts of this case. Unlike the circumstances in *Frost*, here it is conceded that the motion to intervene was timely filed, just sixteen days after the petition was filed. Even assuming, *arguendo*, that it could be argued that Traders was dilatory or careless by failing to notice the motion up for hearing until forty days later, such is not a basis for denying a motion to intervene as of right. *Id.* at 673–74. Therefore, the fact that judgment was rendered between the time the motion was filed and the date the motion was heard does not affect Traders' absolute right to intervene as the uninsured motorist carrier. Accordingly, the trial court erred in denying Traders' motion to intervene.

The judgment denying Traders' motion to intervene is reversed and the cause is remanded with directions to the trial court to grant Traders' motion to intervene so that it may file a motion to set aside the judgment or such other pleading as it deems appropriate.

All concur.