Bradford CHARLES, Respondent,

v.

CONSUMERS INSURANCE, Appellant.

Nos. WD 73315, WD 73363.

Missouri Court of Appeals, Western District.

May 29, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 2012.

Application for Transfer Denied Aug. 14, 2012.

---

John L. Mullen, Timothy P. Price, and Nikki Cannezzaro, Kansas City, MO, for Appellant.

Paul Hasty, Jr., Overland Park, KS, for Respondent.

Before Division One: VICTOR C. HOWARD, Presiding Judge, and ALOK AHUJA and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

This is an underinsured motorist case. The issue is whether the plaintiff's underinsured motor vehicle ("UIM") insurer has a right to intervene in plaintiff's liability action against the underinsured motorist when the UIM insurer first denied that underinsured motorist coverage applied, but later determined that such coverage may apply, conceding such at the time of the relevant intervention ruling and prior to trial in the liability action against the underinsured motorist. We hold that, under these facts, the UIM insurer does have a right to intervene to contest the underinsured motorist's liability and/or damages. Therefore, we reverse.

### Facts and Procedural Background[1]

Appellant Consumers Insurance Company ("Consumers") entered into an insurance contract ("UIM Policy") with Respondent Bradford Charles. On March 31, 2010, Charles's attorney informed Consumers via letter that, on September 26, 2009, Charles had been injured in a motor vehicle accident. The letter stated that a

---

1. On appeal from a denial of a motion to intervene, we review the facts in the light most favorable to the circuit court's judgment. *Lawrence F. Behymer, Sr. Marital Trust v. City of Ballwin*, 308 S.W.3d 748, 752 (Mo. App. E.D.2010).

car driven by Christina Ranum ("the tortfeasor") collided with Charles while Charles was riding a motorcycle. The letter further stated:

> We've determined that the motorist that was at fault was insured under a policy issued by Travelers with liability limits of $50,000.00. That is not sufficient to compensate Mr. Charles for his injuries. Therefore, an underinsured motorist claim is presented to Consumers Insurance Company under the policy issued to Brad Charles.

Initially, Consumers denied that there was UIM coverage under the UIM Policy,[2] but later determined there may, in fact, be applicable UIM coverage under the UIM Policy.

On April 30, 2010, Charles filed a petition against Ranum, seeking damages arising from the accident. Ranum filed an answer, admitting that the accident occurred but denying that she was negligent and denying the nature and extent of Charles's alleged damages. On June 2, 2010, Charles entered into a partial settlement with Ranum whereby Charles agreed to limit his recovery to Ranum's policy limits without conceding that his damages were limited to that amount. The parties understood that the litigation against Ranum would continue despite the settlement. At an eventual damages hearing, Ranum did not appear to contest either damages or liability.

Immediately after Charles and Ranum entered into the partial settlement agreement, Consumers moved to intervene in Charles's liability action against Ranum for the purpose of contesting Ranum's liability and/or Charles's damages. The motion asserted that Charles had a UIM policy of insurance with Consumers that was in effect on the date of the accident and that (1) the policy may afford UIM coverage to Charles for the subject motor vehicle accident in that Ranum may qualify as an underinsured motorist; and (2) Consumers may be bound by a determination of liability or damages against Ranum. Charles did not object to the motion to intervene, and, accordingly, the circuit court initially granted the motion. Consumers confirmed in a subsequent letter to Charles that it had determined, contrary to its previous letter, that underinsured motorist coverage may apply under the UIM Policy.

Approximately three months later, after Consumers had initiated discovery, Charles filed a motion for summary judgment, requesting that the circuit court dismiss Consumers from the lawsuit. Charles argued that, since Consumers had initially denied coverage, it forfeited any right that it had to defend against Charles's allegations against Ranum.

On November 9, 2010, the circuit court held a hearing on Charles's motion and then granted it. The court found that Consumers had initially denied coverage but then had "changed its position." The court found that, in denying coverage, Consumers had forfeited its right to intervene.

The circuit court then conducted a hearing (Ranum did not appear to contest Charles's case) in which Charles presented evidence regarding the accident and his damages. Following this hearing, the court entered judgment, finding that "[Charles] is entitled to judgment against [Ranum] in the sum of $350,000.00, and judgment is hereby entered in favor of

---

**2.** Consumers maintains that it did not deny coverage, even initially. Since we find in Consumers's favor on other grounds, we need not decide that issue, and we assume in this opinion, for the sake of argument only, that Consumers did deny coverage initially.

[Charles] and against [Ranum] in that amount."

Consumers filed a motion for a new trial, alleging that it did not receive notice of the hearing. The circuit court overruled the motion. Consumers timely appeals.

### Standard of Review

Although the circuit court granted Charles "summary judgment" against Consumers, we will treat the court's action as a reconsideration and denial of Consumers's motion to intervene. Charles has neither asserted a claim against Consumers, nor is he defending against a claim asserted by Consumers; he is, therefore, not entitled to a "judgment" (summary or otherwise) against Consumers. *See* Rule 74.04(a), (b) (contemplating summary judgment for parties "seeking to recover upon a claim" or parties "against whom a claim . . . is asserted"). What is really at issue is Consumers's right to intervene in Charles's lawsuit against Ranum.[3]

"The denial of a motion to intervene as of right under Rule 52.12(a) must be affirmed unless it is against the weight of the evidence, it is unsupported by sufficient evidence, or it either misinterprets the law or misapplies the law." *Moxness v. Hart*, 131 S.W.3d 441, 444 (Mo.App. W.D.2004). However, "where intervention is sought as of right and the movant brings himself within the terms of [Rule 52.12(a)], the trial court has no discretion in the matter," and it must grant the motion. *Frost v. White*, 778 S.W.2d 670, 672 (Mo. App. W.D.1989).

### Legal Analysis

In its first point on appeal, Consumers argues that the circuit court erred in entering summary judgment against it (denying its right to intervene) in that an initial denial of coverage in an underinsured motorist case does not automatically defeat a UIM insurance company's right to intervene in its insured's lawsuit against an underinsured motorist.[4] We agree.

■■■ In addressing the issue of Consumers's right to intervene, it is important to point out the distinction between first party claims and third party liability claims, as this distinction is critical to our analysis. When a policyholder asserts a claim against his own insurance company for underinsured or uninsured motorist benefits, he is making a first party claim. In contrast, when a policyholder is sued by a third party and seeks a defense or coverage in the event of a judgment against him, he is asserting a third party liability claim against his liability insurer.

■■■ In the third party liability claim context, the insurance carrier has no right to intervene in litigation between its policyholder and the third party; the carrier can participate in the litigation only pursuant to its contractual obligation to defend the policyholder. *Ballmer v. Ballmer*, 923 S.W.2d 365, 368 (Mo.App. W.D.1996). This is true because the insurance carrier has no direct interest in a lawsuit for damages filed against its policyholder by a third party. *Id.* In such cases, if the insur-

---

**3.** Ordinarily, a denial of a motion to intervene as of right is immediately appealable, *Lodigensky v. Amer. States Preferred Ins. Co.*, 898 S.W.2d 661, 663 n. 2 (Mo.App. W.D.1995); however, that issue does not complicate the appeal here because we would not charge Consumers with the trial court's error in calling its action a summary judgment as op-

posed to a reconsideration and denial of the motion to intervene.

**4.** Consumers raises three other points on appeal. Because we find in favor of Consumers on Point I, we need not address the remaining issues.

er has a right to participate in the litigation, it is a contractual right, not a right based on Rule 52.12(a). *Whitehead v. Lakeside Hosp. Ass'n,* 844 S.W.2d 475, 479–81 (Mo.App. W.D.1992). Thus, if the carrier wrongfully denies coverage, it has breached its contractual obligation, and, in turn, the policyholder is relieved of his obligations under the contract. *Id.* at 481. Therefore, the carrier can no longer participate in the litigation absent the policyholder's consent. *Id.* Rule 52.12, setting out the requirements for intervention of right, is not available to restore an insurance carrier to control of the defense of a third party liability claim when the carrier forfeited control by denying coverage. *Id.* Nor can the insurer's breach and the insured's settlement in reliance thereon, create an interest where one does not otherwise exist. *Id.*

■ In contrast, Missouri appellate opinions have consistently held that an uninsured or underinsured motorist carrier has an absolute right to intervene in a lawsuit brought by its policyholder against an uninsured or underinsured motorist. *Nervig v. Workman,* 285 S.W.3d 335, 340–41 (Mo.App. S.D.2009). In the uninsured-underinsured motorist context, when the insurer seeks intervention, it steps into the shoes of the alleged tortfeasor and assumes an adversarial position to that of the insured. *Kinney v. Schneider Nat'l Carriers, Inc.,* 200 S.W.3d 607, 613 (Mo. App. W.D.2006).

## A. Rule 52.12

Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action *may* as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 52.12(a) (emphasis added).

■ Thus, a party seeking intervention under this rule must show "1) an interest relating to the property or transaction which is the subject of the action; 2) that the applicant's ability to protect such interest is impaired or impeded; and 3) that the existing parties are inadequately representing the applicant's interest." *Stafford v. Kite,* 26 S.W.3d 277, 279 (Mo.App. W.D.2000).

■ Generally, when an insured files suit against an uninsured motorist or an underinsured motorist, there is no debate under Missouri law that the insured's uninsured motor vehicle ("UM")/UIM insurance carrier has an interest that may be impaired or impeded if the UM/UIM carrier is not allowed to intervene to contest the issues of liability and/or damages. *Pollock v. Searcy,* 816 S.W.2d 276, 278 (Mo.App. S.D.1991) ("An uninsured or underinsured motorist carrier can have an interest in a personal injury action and be entitled to intervene in it."); *Frost,* 778 S.W.2d at 672 ("[I]t is not debatable that the insurance carrier has a right under Missouri law to intervene in a case where a claim is made that there is an uninsured motorist as a named defendant."). Such is the case because, assuming the insurer was properly notified of the litigation, and assuming further that it cannot prove fraud or collusion, it will be bound by an adjudication of liability and/or damages, and it will not be able to contest those issues in a subsequent proceeding to enforce the insurance contract.[5] *Nervig,* 285

5. Although most of these cases involved unin-    sured motorist claims, our Supreme Court

S.W.3d at 340; *Stafford,* 26 S.W.3d at 280; *Frost,* 778 S.W.2d at 672; *Alsbach v. Bader,* 616 S.W.2d 147, 150 (Mo.App. E.D. 1981); *Beard v. Jackson,* 502 S.W.2d 416, 418 (Mo.App.1973). Thus, the first two elements of intervention—interest in the litigation and inability (absent intervention) to protect that interest—are normally met in uninsured motorist or underinsured motorist cases. *Alsbach,* 616 S.W.2d at 150.[6]

■ The three requirements for intervention, as they have been applied to UM/UIM cases, support Consumers's intervention. The parties agree that (1) Consumers issued an insurance policy to Charles that includes an underinsured motorist provision; (2) Charles was injured in a motor vehicle accident; and (3) Consumers may be liable to Charles pursuant to the underinsured motorist provision of their insurance contract in that Ranum may have been negligent and underinsured. Further, Consumers has no ability to protect against its potential liability (i.e., it has no way of contesting that Ranum is liable to Charles and/or that Ranum is liable to the full extent that Charles claims) absent intervention. Moreover, the third element of intervention as of right—that the existing parties are inadequately representing Consumers's interest—is also met, given that Ranum did not contest liability or damages and Charles agreed to execute the judgment against her for *only* the limit of her insurance policy.

■ Charles argues, however, that this case is different. He contends that Consumers's initial denial of coverage voided any interest Consumers had in the litigation, even though (1) intervention was initially granted by the trial court with no objection by Charles; and (2) at the time the trial court reconsidered its previous ruling on intervention, Consumers had retracted its previous denial of coverage and admitted that Charles may, in fact, be entitled to UIM coverage under the UIM Policy. We disagree. Rule 52.12(a) provides that "anyone *shall* be permitted to intervene in an action ... when the applicant *claims* an interest ... [and] the applicant is so situated that the disposition of the action *may* as a practical matter impair or impede the applicant's ability to protect that interest." (Emphasis added.) As the terms of the rule make clear, an intervenor, at the time of its intervention, need not *concede* that it will be bound by the judgment. *Beard,* 502 S.W.2d at 418. Rather, it is the potential for liability under an underinsurance clause that triggers the "interest" recognized by Rule 52.12(a). *See id.*

■ Here, even though Consumers initially denied coverage under the underinsurance provision of its contract with Charles, it subsequently determined that coverage *may* apply,[7] sent a letter to that

---

has noted that the same rationale applies in underinsured motorist cases. *State ex rel. Shelton v. Mummert,* 879 S.W.2d 525, 528 (Mo. banc 1994).

6. As explained in more detail *infra,* the Missouri cases permitting intervention by uninsured or underinsured motorist carriers contrast with decisions that have held that, where an insurer provides coverage to an insured *against third party liability claims,* it generally has no right to intervene in the underlying action in which the insured's liability will be

determined. *See, e.g., Borgard v. Integrated Nat'l Life Ins. Co.,* 954 S.W.2d 532, 535 (Mo. App. E.D.1997); *Ballmer,* 923 S.W.2d at 368.

7. Charles acknowledges, and the trial court found, that Consumers abandoned its initial denial of coverage argument. In fact, Charles argues that "[t]he issue, in this case, is whether a party can breach a contract, by refusing to perform its obligation under the contract, and *then later retract its breach* and attempt to act as if it had never breached the contract."

effect to Charles, and sought to protect that interest by intervening. Moreover, Charles has not disputed that his action against Ranum *may* impair or impede Consumers's right to deny his claimed damages in a subsequent suit on the insurance policy. *See Alsbach,* 616 S.W.2d at 150. The Eastern District of this court has rejected the claim that the uninsured motorist carrier must admit coverage in order to intervene in the liability and damages case, noting that Rule 52.12(a)(2) does not require that the intervenor plead that it would be bound by the judgment. *Beard,* 502 S.W.2d at 418. A contrary rule would force the insurer to sacrifice at least one of the elements of the insured's future cause of action against it: the insurer would either have to (1) concede coverage and litigate (as the intervenor in the insured's action against the third party) the issues of the liability of the third party and the existence and/or extent of the insured's damages; or (2) effectively concede liability and damages (by not intervening in a lawsuit in which the defendant does not zealously defend itself) and litigate coverage in the insured's future cause of action against the insurer.

Indeed, we have specifically stated that a "carrier need not admit liability . . . in order to have an interest in the action" for the purposes of intervening in an uninsured motorist case. *Stafford,* 26 S.W.3d at 280 (holding that intervention was proper even though the insurer never conceded that the tortfeasor was uninsured); *see also Protective Cas. Ins. Co. v. Cook,* 734 S.W.2d 898, 901–02 (Mo.App. E.D.1987) (holding that an insurer had an interest sufficient to warrant intervention in a case relating to its insured's uninsured motorist coverage even when it maintained that the insured was not injured by an uninsured motorist).

In his motion, Charles did not argue that, even though Consumers meets the elements of Rule 52.12, it should be equitably estopped from relying upon the rule due to its previous denial of coverage, combined with justified reliance by Charles. Charles did argue below, and continues to argue here, that he settled with Ranum in reliance on Consumers's denial of coverage. But that bare allegation is insufficient to bring an equitable estoppel argument before us. *See Laciny Bros. Inc. v. Dir. of Revenue,* 869 S.W.2d 761, 765 (Mo. banc 1994) ("Three elements must be present to support a claim for equitable estoppel. There must be (1) a statement or representation, (2) an act by a party based on reliance of the statement or representation, and (3) injury to the party who relied due to the reliance."). Moreover, even if Charles *alleged* equitable estoppel, he did not prove it, because he has not satisfactorily explained (either below or on appeal) why a denial of coverage would prompt him to settle the claim with the tortfeasor or how he was injured by reliance.[8] Rather, Charles argued that, as a matter of law, Consumers had no right to intervene. As explained above, such is not the case.

### B. Breach of Contract

Charles cites us to numerous third party liability claim cases where courts have held that, by denying coverage, an insurer loses its own right to insist on the insured's compliance with the terms of the

(Emphasis added.) Consumers, of course, claims it never denied coverage.

8. Since the question is not properly before us, we express no opinion as to whether a party can be equitably estopped from intervening as of right under Rule 52.12(a), nor do we express an opinion as to whether estoppel, if available, would apply to the facts of this case.

insurance contract. For example, when an insurer denies coverage after the insured has asked that it defend him against a lawsuit brought by a third party plaintiff, the insurer loses its contractual right to control litigation thereafter. *Hyatt Corp. v. Occidental Fire & Cas. Co. of N.C.*, 801 S.W.2d 382, 388 (Mo.App. W.D.1990); *State ex rel. Rimco, Inc. v. Dowd*, 858 S.W.2d 307, 309 (Mo.App. E.D.1993); *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 89–90 (Mo.App. W.D. 2005); *Ballmer*, 923 S.W.2d at 369. Likewise, even when an insurer denies coverage in a first party liability coverage case, it may not thereafter insist on performance of a consent clause in the contract, whereby the insured agreed to obtain the insurer's consent before settling with a third party.[9] *Cmty. Title Co. v. Safeco Ins. Co. of Amer.*, 795 S.W.2d 453, 461–62 (Mo.App. E.D.1990). Those principles exist as a function of contract law: the right to control litigation and the right to have one's consent obtained before settling are contractual rights. *See Whitehead*, 844 S.W.2d at 481 n. 2. An insurer loses its contractual rights when it breaches the contract by wrongfully denying coverage. *Id.* at 481 ("The legal consequences to the insurer from the breach of contract for unjustified refusal to defend on the ground of noncoverage include the loss of its *contractual* right to demand that the insured comply with certain prohibitory as well as affirmative policy provisions.") (emphasis added). It would be incongruous to permit an insurer to insist on the insured's strict performance of the contract while itself disavowing any obligations thereunder.

■ But Consumers is not attempting to assert any contractual right. Its right to intervene in *this* situation springs—not from the insurance con-

tract—but from Rule 52.12(a). In the third party liability context, the insurer has no interest in the lawsuit, because, until judgment against its insured is *actually rendered*, it is not adverse to anyone in the case. *Ballmer*, 923 S.W.2d at 368 ("[A]n insurer does not have an interest that implicates [Rule 52.12(a)] until the insurer is called upon to make indemnity as to the judgment; it is when a claim for potential indemnity becomes a demand for actual indemnity that the right of the insurer to intervene accrues."). In such cases, if the insurer has a right to participate in the litigation, it is a contractual right, not a right based on Rule 52.12(a). *Whitehead*, 844 S.W.2d at 479–81.

■ By contrast, in the uninsured-underinsured motorist first party claim context, the insurer *immediately* steps into the shoes of the alleged uninsured/underinsured tortfeasor, and thus its interests are adverse to those of its insured *at the time it seeks intervention*. *Kinney*, 200 S.W.3d at 613. No reasonable person could deny that one standing in the shoes of an alleged tortfeasor has an interest in the litigation.

■ Thus, in the third party liability claim context, the fact that an insurer has breached its contract by denying coverage is dispositive, for the insurer has no interest in the litigation under Rule 52.12(a) and can participate in the litigation only pursuant to its contractual right to do so, which evaporated the moment the insurer breached the contract.

■ But when an insurer actually has an interest under Rule 52.12(a), which, as discussed, is typically the case in the uninsured-underinsured motorist first party claim context, its right to intervene is ab-

---

9. That principle would be at play here *if* Consumers contested Charles's right to enter into

the settlement agreement with Ranum. However, Consumers makes no such claim.

solute. *Nervig*, 285 S.W.3d at 340. Failure to concede that coverage will ultimately apply does not divest the insurer of that interest. *Stafford*, 26 S.W.3d at 279–80 (holding that intervention was proper even though the insurer never admitted that the tortfeasor qualified as an uninsured motorist under the policy). Thus, that Consumers now asserts only that coverage *may* apply does not destroy Consumers's interest.

Moreover, if Consumers were deemed to have breached its contract by initially denying coverage—while that would be of the greatest importance when an insurer's right to be in the litigation itself depends on the contract—such an initial denial would not be dispositive when Consumers's right to intervene is based on Rule 52.12(a).[10] We have described the latter interest as "absolute," and, if an equitable estoppel exception to the absolute nature

of Rule 52.12(a) exists (which we do not decide today), it would not carry the day here, because Charles has neither pled nor proved any such exception. Charles argues only that Consumers's initial denial of coverage is *dispositive* of the issue of whether Consumers can intervene in his lawsuit against an underinsured motorist. That is not the law.[11]

The only issues are whether Consumers has an interest in the subject of Charles's lawsuit; whether that interest may be impeded or impaired by the litigation's outcome; and whether Ranum adequately represents the interest. As explained above, each of those issues are resolved in a manner that requires that Consumers be permitted to intervene. Since the circuit court denied Consumers the right to intervene, the judgment must be reversed.[12] Point granted.

---

**10.** We note that nothing in this opinion speaks to whether Consumers's initial denial of coverage (if it was a denial, which we do not decide here) would support a cause of action for vexatious refusal. *See Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 458 (Mo. banc 2006) (holding that the insured stated a cause of action for vexatious refusal when the insurer initially denied coverage but subsequently changed its position and paid the claim).

**11.** Charles's argument could be interpreted as alleging that Consumers's motion to intervene was not timely. While our courts have recognized that delay may be the basis for denying intervention, they have been restrained in finding that delay justifies denying intervention. *Nervig*, 285 S.W.3d at 340–41 (holding that an insurer's motion to intervene was timely even though default judgment already had been entered against the defendant because the motion was filed when the trial court still had the authority to set aside the default judgment); *Frost*, 778 S.W.2d at 673–74 (holding that an insurer's motion to intervene, filed after judgment against the uninsured motorist, was not untimely because insurer was not notified that defendant had been served and because where intervention is otherwise available as of right, it should not

be denied as a sanction for delay absent a showing of prejudice resulting from the delay). In this case, where there is no evidence that Consumers was notified that Ranum was served, Consumers filed its motion to intervene thirty-three days after the petition was filed and before judgment was entered, and Charles makes no allegation as to how he was prejudiced by the timing of the filing, we cannot find that there was delay that justifies a sanction.

**12.** Charles also argues that the motion to intervene should have been denied for not complying with the procedural requirements of Rule 52.12 in that Consumers did not file an answer along with its motion. It is true that Rule 52.12(c) requires a pleading; however, it is not mandatory that the "pleading" be filed separately from the motion itself. *See Moxness*, 131 S.W.3d at 446–47. In any case, Charles did not object in the court below to any procedural defect in the motion, and he thereby waived his right to rely on any such defect. *See Pulitzer Publ'g Co. v. Transit Cas. Co.*, 43 S.W.3d 293, 303 n. 5 (Mo. banc 2001) ("Since the parties and the trial court treated [procedurally defective filings made in conjunction with a motion to intervene] as the petition and answer required by Rule 55.01, so does this Court.").

## Conclusion

Consumers had a right to intervene in Charles's suit against Ranum, and therefore the circuit court lacked the discretion to deny Consumers's motion to intervene. An intervenor as of right under Rule 52.12(a) closely parallels an indispensable party under Rule 52.04(b). Our Supreme Court has noted that the "interest" sufficient to satisfy the standards of a necessary party under Rule 52.04 is substantially the same as that required to satisfy the "interest" standard of intervention under Rule 52.12. *See Bunting v. McDonnell Aircraft Corp.*, 522 S.W.2d 161, 169 (Mo. banc 1975). Therefore, as is the case when a judgment is entered in the absence of an indispensable party, the trial court here lacked the authority to render judgment in Consumers's absence.[13] *Jones v. Jones*, 285 S.W.3d 356, 361 (Mo.App. S.D. 2009) (holding that a trial court has no authority to render judgment in the absence of an indispensable party). Accordingly, we reverse the judgment and remand for proceedings consistent with this opinion.

VICTOR C. HOWARD, Presiding Judge, and ALOK AHUJA, Judge, concur.

---

**13.** Obviously, the same result would not apply if an interested party were given notice but failed to exercise its right to intervene.