# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-2786

_____

David Behlmann

*Plaintiff - Appellant*

v.

Century Surety Company

*Defendant - Appellee*

State Farm Mutual Automobile Insurance Company

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 9, 2015
Filed: July 24, 2015

_____

Before GRUENDER, MELLOY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

After a car accident, David Behlmann sued his insurer, Century Surety Co., for underinsured motorist benefits. The jury found for Century. Behlmann requested a

new trial, challenging the evidence on the value of his medical treatment and the strike of the only African-American venireperson. The district court[1] denied a new trial. Behlmann appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

Behlmann's car was hit by a car driven negligently by Craig Sheffer. Behlmann was billed $89,884.79 for medical treatment. To pay the bills, he needed $38,298.77 (due to insurance discounts/payments). Behlmann settled with Sheffer for $50,000, the limit of Sheffer's policy. Claiming injuries over $50,000, Behlmann sued Century for underinsured motorist benefits.

At trial, Century argued that Behlmann's medical treatment cost less than $50,000 and resulted from pre-existing conditions. Century introduced a stipulation of the amount billed to Behlmann ($89,884.79) and the amount needed to pay the bills ($38,298.77). The court admitted the stipulation under § 490.715.5 RSMo.

During voir dire, over Behlmann's objection, Century used a peremptory strike on Juror 4—the only African American of the 17 venirepersons.

The jury found for Century, denying Behlmann benefits. Behlmann requested a new trial based on the strike and the introduction of the amount needed to pay his bills. The district court denied a new trial.

---

[1] The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

## II.

Behlmann seeks a new trial, claiming that the amount needed to pay his medical bills was improperly admitted under section 490.715. This court reviews the denial of a new trial for a "clear abuse of discretion," reversing only "to prevent a miscarriage of justice." ***Burris v. Gulf Underwriters Ins. Co.***, 787 F.3d 875, 878 (8th Cir. 2015), *considering* **Fed. R. Civ. P. 59**. This court reviews de novo issues of statutory interpretation. ***Minn. Supply Co. v. Raymond Corp.***, 472 F.3d 524, 537 (8th Cir. 2006).

Section 490.715 generally bars the introduction of collateral-source evidence. **§ 490.715.1** ("No evidence of collateral sources shall be admissible other than such evidence provided for in this section."). *See generally **Deck v. Teasley***, 322 S.W.3d 536, 538 (Mo. banc 2010) (noting section 490.715 codifies common law collateral-source rule). Subsection 5 is an exception: "Parties may introduce evidence of the value of the medical treatment rendered to a party that was reasonable, necessary, and a proximate result of the negligence of any party." **§ 490.715.5(1)**. *See also* **§ 490.715.5(2)** (explaining that the value of medical treatment may be "the dollar amount necessary to satisfy the financial obligation to the health care provider").

Behlmann argues subsection 5 applies only in tort actions and only when the tortfeasor is a plaintiff or defendant in the suit. *See* **§ 490.715.5(1)** (permitting evidence of the value of medical treatment resulting from the "*negligence* of any *party*" (emphases added)). He claims that subsection 5 does not apply here, a contract action that does not include the tortfeasor. Thus, he says, the amount needed to pay his bills is inadmissible collateral-source evidence. The district court found that subsection 5 applies to "an insurer who stands in the shoes of a party," noting underinsured motorist coverage claims are "inherently derivative of the negligence of the non-party tortfeasor."

Interpreting state statutes, this court applies that state's rules of statutory construction. *See **Roubideaux v. N.D. Dep't of Corr. & Rehab.***, 570 F.3d 966, 972 (8th Cir. 2009). In Missouri, the "primary rule of statutory interpretation is to give effect to the General Assembly's intent as reflected in the plain language of the statute at issue. This Court looks to canons of statutory interpretation only when the meaning of a statute is ambiguous or would lead to an illogical result that defeats the purpose of the legislation. This Court interprets statutes in a way that is not hyper-technical, but instead, is reasonable and logical and gives meaning to the statute." ***Ben Hur Steel Worx, LLC v. Dir. of Revenue***, 452 S.W.3d 624, 626 (Mo. banc 2015) (internal citations and quotation marks omitted).

Nothing in the statute limits it to tort actions. Section 490.715 applies to "all causes of action," according to another section of the law enacting subsection 5. **H.B. 393**, § 2, 2005 Mo. Laws 655. *See also* **H.B. 700**, § 45, 1987 Mo. Laws 810, 812 (stating section 490.715, as originally passed, applies to "all causes of action"), *codified at* **§ 537.069 RSMo**. While subsection 5 does refer to "negligence," negligence may be an issue in non-tort actions. *See **Amato v. State Farm Mut. Auto. Ins. Co.***, 213 S.W.3d 202, 208 (Mo. App. 2007) (noting negligence at issue in underinsured motorist case). Behlmann notes that the bill enacting subsection 5 is described as "tort reform" by legislative summaries. The bill itself, however, is not so limited. It has other provisions not limited to torts. *See, e.g.*, **H.B. 393**, § 355.176 (service of process for a corporation), 2005 Mo. Laws 642-43; § 408.040 (prejudgment interest in "nontort" and tort actions), 2005 Mo. Laws 643-44. And it is titled "An Act to repeal sections . . . and to enact in lieu thereof twenty-three new sections relating to *claims for damages and the payment thereof*." 2005 Mo. Laws 642 (emphasis added). *See* **Mo. Const. art. III, § 23** ("No bill shall contain more than one subject which shall be clearly expressed in its title . . . ."); ***Missouri State Med. Ass'n v. Missouri Dep't of Health***, 39 S.W.3d 837, 840-41 (Mo. banc 2001) (discussing constitutional requirements for bill title).

In tort and non-tort actions, subsection 5 permits the introduction of evidence on the value of medical treatment only when that treatment resulted from the negligence of "any party." Behlmann reads "party" to mean the plaintiff or defendant in the lawsuit. True, this is one definition of "party." *See* **Black's Law Dictionary** 1297 (10th ed. 2014) (providing as one definition of "party": "One by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment; litigant <a party to the lawsuit>").

But the "reasonable and logical" interpretation of subsection 5 gives "party" a broader meaning. Century's liability is derivative of Sheffer's. The insurance policy limits damages to those Behlmann is "legally entitled to recover as compensatory damages" from Sheffer. At trial, Behlmann had to prove Sheffer's negligence caused more than $50,000 in damages. *See* **Jury Instruction 7-9** (defining negligence and explaining verdict must be for Behlmann if Sheffer's negligence caused damages in excess of $50,000). *See also* ***Amato***, 213 S.W.3d at 208 ("Under Missouri law, an insured is required to establish liability . . . on the part of the other driver in order for the insured to be 'legally entitled to collect' and thus prevail on a claim for underinsured-motor-vehicle coverage." (*citing, e.g.*, ***Oates v. Safeco Ins. Co. of Am.***, 583 S.W.2d 713, 716 (Mo. banc 1979))). Litigating Sheffer's liability, Century may raise the defenses Sheffer could have raised—including introducing value-of-medical-treatment evidence under subsection 5. *See* ***Charles v. Consumers Ins.***, 371 S.W.3d 892, 898 (Mo. App. 2012) ("In the uninsured-underinsured motorist context, when the insurer seeks intervention, it steps into the shoes of the alleged tortfeasor and assumes an adversarial position to that of the insured.").

Behlmann's reading of the statute leads to unreasonable and illogical results. It gives Behlmann a greater recovery from Century than he would receive from Sheffer in a tort action. *See* ***Wendt v. Gen. Accident Ins. Co.***, 895 S.W.2d 210, 217

(Mo. App. 1995) (en banc) (noting "the underlying purpose of underinsured motorist coverage—to place the insureds in the position they would have been in had the tortfeasor been adequately insured"). Behlmann's reading also applies subsection 5 arbitrarily. For example, the statute would not apply here, but would apply had Century intervened if Behlmann had sued Sheffer. *Cf. Charles*, 371 S.W.3d at 898 ("[A]n uninsured or underinsured motorist carrier has an absolute right to intervene in a lawsuit brought by its policyholder against an uninsured or underinsured motorist."). The statute also would apply if Century argued comparative fault (which it pled here but did not pursue at trial), since the negligence of Behlmann, a plaintiff, would be at issue. *Cf. Wendt*, 895 S.W.2d at 215 (noting comparative fault instruction in underinsured motorist case is appropriate if supported by substantial evidence). It is implausible that the General Assembly intended the statute's applicability to depend on whether the tortfeasor settles or the insurer pursues comparative fault. *See Marston v. Juvenile Justice Ctr. of the 13th Judicial Cir.*, 88 S.W.3d 534, 537 (Mo. App. 2002) ("[W]e do not presume that the General Assembly acted in a meaningless manner or intended an absurd result.").

The district court did not err in applying subsection 5 to admit the amount needed to pay Behlmann's bills.[2]

III.

Behlmann challenges the strike of Juror 4, an African American. The Equal Protection Clause of the Fourteenth Amendment prohibits striking a juror solely on the basis of race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). Whether a strike is improper under *Batson* is a three-step inquiry:

---

[2]This court need not address Century's alternative argument that Behlmann invited any error.

First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Edwards v. Roper*, 688 F.3d 449, 454 (8th Cir. 2012), *quoting **Miller-El v. Cockrell***, 537 U.S. 322, 328-29 (2003). This court reviews a *Batson* ruling for clear error. **Kahle v. Leonard**, 563 F.3d 736, 739 (8th Cir. 2009).

The district court, assuming a prima facie case, determined Century had race-neutral reasons for the strike. It concluded Behlmann did not show purposeful discrimination. Behlmann, claiming Century's reasons are pretext for discrimination, contends the court erred at step three of the *Batson* analysis.

Century offers three reasons for the strike: (1) Juror 4 was a long-time autoworker; (2) he failed to disclose he was an autoworker despite relevant questioning; and (3) he failed to disclose involvement in prior litigation.[3] Behlmann argues each reason is pretextual.

First, he contends that Century never expressed concern about Juror 4's tenure as an autoworker. Century did not state specifically that it believed Juror 4's experience in the automobile industry would make him sympathetic to Behlmann. But during voir dire it explained, separately from the failures to disclose, that one reason for the strike was that Juror 4's "information sheet from the Court indicates

---

[3]During voir dire, Century also noted Juror 4's previous jury experience and his purchase of cars from Behlmann. The district court did not rely on the jury experience in sustaining the strike. It found the car purchases were not a valid reason to strike Juror 4, as other jurors also had bought cars from Behlmann. Century does not pursue these reasons on appeal.

he worked a long time as a retired auto worker." This shows that Juror 4's tenure concerned Century.

Second, Behlmann disputes the court's characterization of Juror 4 as "not forthcoming" about being an autoworker. The court stated that "the most significant thing is there were a number of questions about asking people about their involvement with the auto industry with auto dealerships. It seems to me there were a number of questions asked that frankly I was surprised he didn't say anything about, being an auto worker." Behlmann focuses on the form of the questions in order to argue that Juror 4 was not being evasive. But, "'determinations of credibility and demeanor lie peculiarly within a trial judge's province.'" *See **Smulls v. Roper***, 535 F.3d 853, 861 (8th Cir. 2008) (en banc), *quoting **Snyder v. Louisiana***, 552 U.S. 472, 477 (2008).

Third, Behlmann argues Juror 4's alleged failure to disclose involvement in other litigation is based on speculation. He claims Century did not confirm that a plaintiff in past asbestos litigation, with the same name as Juror 4, was actually Juror 4. Behlmann provides no reason to believe that the plaintiff was not Juror 4 and cites no failure in Century's apparently good-faith investigation. *See **id.*** at 859 (noting party challenging strike has "ultimate burden of establishing purposeful discrimination").

The district court did not clearly err in denying Behlmann's *Batson* challenge because Behlmann did not show Century's reasons for striking Juror 4 were pretext for purposeful racial discrimination.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____